[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 488.]

THE STATE OF OHIO, APPELLANT, *v.* JORDAN, APPELLEE.

[Cite as *State v. Jordan*, 2000-Ohio-225.]

*Criminal procedure—Prosecution for unlawful possession of dangerous ordnance in violation of R.C. 2923.17—State not required to prove that defendant knows of the specific characteristics of the weapon or item possessed that bring it within the statutory definition of "dangerous ordnance."*

(No. 99-1668—Submitted May 10, 2000—Decided August 30, 2000.)

APPEAL from the Court of Appeals for Montgomery County, No. 17686.

_____

{¶ 1} On September 8, 1998, an indictment was filed with the Court of Common Pleas of Montgomery County charging appellee with a violation of R.C. 2923.17(A), unlawful possession of dangerous ordnance, to wit, a sawed-off shotgun. The relevant facts of this matter are gleaned primarily from three joint stipulated documents submitted to the trial court.

{¶ 2} On June 19, 1998, Officers Rike and Oldham of the Dayton Police Department responded to a police dispatch of gunshots being fired in the area of 400 Dearborn. The dispatch also included a description of a male carrying a shotgun. Upon the officers' arrival, witnesses at the scene directed them to an alley and indicated that appellee, Thomas Eugene Jordan, had a shotgun. As the officers entered the alley they observed appellee, a male matching the description in the police dispatch, carrying a shotgun. Appellee attempted to flee the scene. The officers pursued appellee and eventually forced him, at gunpoint, to surrender his weapon. The officers seized the weapon and placed appellee under arrest.

{¶ 3} Appellee's weapon was examined and reports were prepared by the state's expert, Chris Monturo, and by Larry Dehus, an expert for the defense.

Monturo identified the weapon as an operable Winchester model 1200 12-gauge shotgun. Monturo measured the weapon and found it to have a barrel length of seventeen and one-eighth inches and an overall length of twenty-nine and one-half inches. The measurements in the report of defense expert Dehus differed slightly. Dehus measured the barrel length of appellee's weapon at seventeen and seven-eighths inches and the overall length was determined to be thirty and one-fourth inches. In addition, Dehus found that the stock of appellee's weapon had been cut off. Dehus's report also indicated that the weapon was operational.

{¶ 4} Appellee pled not guilty to the charge in the indictment and waived his right to be tried by a jury. A bench trial was held on January 29, 1999. In an opinion issued on February 2, 1999, the trial court entered judgment finding appellee guilty of the charge of unlawful possession of dangerous ordnance in violation of R.C. 2923.17(A). Appellee was subsequently sentenced to a term of incarceration of six months.

{¶ 5} Appellee appealed his conviction and sentence to the Court of Appeals for Montgomery County. In a decision issued July 30, 1999, the court of appeals reversed the judgment of the trial court and ordered appellee discharged.

{¶ 6} This matter is now before this court upon the allowance of a discretionary appeal.

———————————

*Mathias H. Heck, Jr.*, Montgomery County Prosecuting Attorney, and *Cheryl A. Ross*, Assistant Prosecuting Attorney, for appellant.

*Anthony R. Cicero*, Assistant Public Defender, for appellee.

———————————

**DOUGLAS, J.**

{¶ 7} R.C. 2923.17(A) sets forth the offense of unlawful possession of dangerous ordnance and provides that "[n]o person shall knowingly acquire, have, carry, or use any dangerous ordnance." The word "knowingly" establishes the

culpable mental state a defendant must possess in order for there to be a violation of R.C. 2923.17(A). The definition of "knowingly" is found in R.C. 2901.22(B), which provides that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances will probably exist." R.C. 2923.11(K)(1) defines "dangerous ordnance" to include "any automatic or sawed-off firearm." R.C. 2923.11(F) defines a "sawed-off firearm" as meaning "a shotgun with a barrel less than eighteen inches long, or a rifle with a barrel less than sixteen inches long, or a shotgun or rifle less than twenty-six inches long overall."

{¶ 8} The issue presented for our review is whether, in a prosecution for unlawful possession of dangerous ordnance in violation of R.C. 2923.17(A), the state is required to prove that a defendant knows of the specific characteristics of the weapon or item possessed that brings it within the statutory definition of dangerous ordnance. As applicable to the specific facts of this case, the question can be more precisely phrased as whether the state is required to show beyond a reasonable doubt that appellee knew that his shotgun had a barrel length of less than eighteen inches.

{¶ 9} The trial court in this matter held that the state was not required to prove that appellee knew, or was aware of the probability, that the barrel of his shotgun was less than eighteen inches long. The trial court concluded that the state only had to show that appellee knew that he was carrying a weapon. In interpreting R.C. 2923.17(A), the trial court read the *mens rea* requirement of "knowingly" as applicable only to the element of the offense denoting possession, *i.e.,* "acquire, have, carry, or use." Thus, the trial court rejected appellee's argument that "knowingly" also modified the words "dangerous ordnance." Further, the trial court found that the evidence before the court established that the shotgun in appellee's possession met the statutory definition of dangerous ordnance in R.C.

2923.11(K)(1). Having determined that the state met its burden, the trial court found appellee guilty of the charge in the indictment and sentenced him accordingly.

{¶ 10} In reversing the judgment and sentence of the trial court, the court of appeals concluded that the culpable mental state of knowingly found in R.C. 2923.17(A) requires that the state must prove that the accused had knowledge of those specific characteristics that made the weapon in his possession dangerous ordnance. In contrast to the trial court's decision, the court of appeals held that the *mens rea* requirement in R.C. 2923.17(A) was applicable to all of the material elements of the statute and not limited solely to the possession element. Therefore, in order to convict appellee for unlawful possession of dangerous ordnance, the court of appeals held that the state needed to prove that appellee knowingly had a shotgun and that appellee knew, or was aware of the probability, that the gun he possessed had a barrel length of less than eighteen inches.

{¶ 11} In the appeal before this court, appellant, state of Ohio, contends that in a prosecution for unlawful possession of dangerous ordnance, the state must prove only that a defendant knowingly possessed dangerous ordnance and that the item is, in fact, a dangerous ordnance as defined in R.C. 2923.11. Appellant argues that knowledge of possession alone is sufficient for there to be a violation of R.C. 2923.17(A) and that the "knowingly" element of the statute does not require the state to show that defendant knew of the specific characteristics of the item that made it dangerous ordnance. Conversely, appellee contends that in order to obtain a conviction pursuant to R.C. 2923.17(A), the state must prove beyond a reasonable doubt that the defendant had knowledge that the item possessed had the specific characteristics that made it dangerous ordnance as defined by R.C. 2923.11. In this regard, appellee urges this court to affirm the court of appeals.

{¶ 12} Appellee, in the courts below and before us, has relied heavily on the United States Supreme Court case of *Staples v. United States* (1994), 511 U.S. 600,

114 S.Ct. 1793, 128 L.Ed.2d 608. The court of appeals below found the analysis of *mens rea* in *Staples* to be very persuasive and the reasoning of the *Staples* majority to be "applicable to the present appeal, if not its holding." For the following reasons, we respectfully find that the decision in *Staples* is not applicable to our consideration of R.C. 2923.17(A).

{¶ 13} In *Staples*, the defendant was convicted pursuant to the National Firearms Act ("Act"), Sections 5801-5872, Title 26, U.S.Code, for possession of an unregistered machine gun. *Staples*, 511 U.S. at 602-604, 114 S.Ct. at 1795-1796, 128 L.Ed.2d at 614-615. Section 5861(d) of the Act makes it a crime for any person to possess a firearm that is not properly registered. A violation of the Act is punishable by up to ten years in prison. Section 5871, Title 26, U.S.Code.

{¶ 14} The defendant, Staples, had in his possession a semiautomatic weapon that had been modified to be capable of fully automatic fire. A fully automatic weapon is defined as a "firearm" under the Act and all firearms must be registered in the National Firearms Registration and Transfer Record. Section 5841, Title 26, U.S.Code. Staples testified that he was not aware that the weapon had been modified and he argued that his alleged ignorance of the weapon's ability to fire automatically should shield him from criminal liability for failing to register his weapon. *Id.* at 603, 114 S.Ct. at 1796, 128 L.Ed.2d at 615. At issue in *Staples* was the *mens rea* required for a conviction for failing to register a firearm in violation of Section 5861(d), Title 26, U.S.Code, which section contains no express mental-state requirement. Specifically, the court considered whether Section 5861(d) requires proof that a defendant knew of the characteristics of his weapon that made it a "firearm" under the Act. *Id.* at 604, 114 S.Ct. at 1796, 128 L.Ed.2d at 615. The court held in *Staples* that the government should have been required to prove beyond a reasonable doubt that Staples knew that the weapon that he possessed had the characteristics that brought it within the scope of the Act. *Id.* at 619, 114 S.Ct. at 1804, 128 L.Ed.2d at 624-625.

{¶ 15} We find that *Staples* is distinguishable. *Staples* is a case involving federal statutory interpretation. Conversely, we are interpreting a state statute. Moreover, the statute at issue in *Staples*, Section 5861(d), Title 26, U.S.Code, is silent concerning the *mens rea* required for a conviction. R.C. 2923.17(A), on the other hand, does have a culpable mental state specified in the section, the *mens rea* of "knowingly." Furthermore, the *Staples* majority went on to emphasize that its holding is a narrow one. The court noted that its reasoning depended "upon a commonsense evaluation of the nature of the particular device or substance Congress has subjected to regulation and the expectations that individuals may legitimately have in dealing with the regulated items." *Id.* at 619, 114 S.Ct. at 1804, 128 L.Ed.2d at 625.

{¶ 16} We now turn our attention to consider the specific language set forth in R.C. 2923.17(A). The question before us can be resolved by determining whether the mental state of "knowingly" in R.C. 2923.17(A) modifies the phrase "dangerous ordnance."

{¶ 17} It is well accepted that the cornerstone of statutory construction and interpretation is legislative intention. *State ex rel. Francis v. Sours* (1944), 143 Ohio St. 120, 124, 28 O.O. 53, 55, 53 N.E.2d 1021, 1023. In order to determine legislative intent it is a cardinal rule of statutory construction that a court must first look to the language of the statute itself. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105, 65 O.O.2d 296, 298, 304 N.E.2d 378, 381. "If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.* (1996), 74 Ohio St.3d 543, 545, 660 N.E.2d 463, 465. Moreover, it is well settled that to determine the intent of the General Assembly " '[i]t is the duty of this court to give effect to the *words used* [in a statute], not to delete words used *or to insert words not used*.' " (Emphasis *sic.*) *Bernardini v. Conneaut Area City School Dist. Bd. of Edn.* (1979), 58 Ohio St.2d 1, 4, 12 O.O.3d 1, 3, 387 N.E.2d

1222, 1224, quoting *Columbus-Suburban Coach Lines v. Pub. Util. Comm.* (1969), 20 Ohio St.2d 125, 127, 49 O.O.2d 445, 446, 254 N.E.2d 8, 9. A court may interpret a statute only where the words of the statute are ambiguous. *State ex rel. Celebrezze v. Allen Cty. Bd. of Commrs.* (1987), 32 Ohio St.3d 24, 27, 512 N.E.2d 332, 335. Ambiguity exists if the language is susceptible of more than one reasonable interpretation. *State ex rel. Toledo Edison Co. v. Clyde* (1996), 76 Ohio St.3d 508, 513, 668 N.E.2d 498, 504. If a statute is ambiguous, the court, in determining the intent of the General Assembly, may consider several factors, including the object sought to be obtained, the legislative history, and other laws upon the same or similar subjects. R.C. 1.49. Finally, statutes defining criminal offenses and penalties are to be strictly construed against the state and liberally in favor of the accused. R.C. 2901.04(A).

{¶ 18} With these principles in mind, we find that the court of appeals erred in its resolution of this matter. We agree with the court of appeals, albeit for different reasons, that the *mens rea* of knowingly set forth in R.C. 2923.17(A) does apply to the phrase "dangerous ordnance." We, however, disagree with the court of appeals regarding the level of knowledge required to sustain a conviction for possession of dangerous ordnance. We, therefore, reverse the ultimate judgment of the court of appeals and reinstate appellee's conviction and sentence.

{¶ 19} As previously indicated, R.C. 2923.17(A) provides that "[n]o person shall knowingly acquire, have, carry, or use any dangerous ordnance." The statutory language at issue in this appeal is ambiguous. R.C. 2923.17(A) is clearly susceptible of more than one reasonable interpretation. *State ex rel. Toledo Edison Co., supra.* Both of the parties to this appeal have spent much time debating whether the specific words of the statute that are at issue should be subject to a strict grammatical construction. Appellant argues that the word "knowingly" in R.C. 2923.17(A) is an adverb and adverbs modify verbs. Thus, it is appellant's contention that "knowingly" modifies only the words of the statute denoting

possession, the verbs "acquire, have, carry, or use." Appellee on the other hand argues that "knowingly" applies "to the entire predicate of R.C. 2923.17(A)," *i.e.*, "acquire, have, carry, or use any dangerous ordnance." We agree with the court of appeals that the benefit of engaging in an exercise on the finer points of English grammar when interpreting a criminal statute is subject to serious debate. As the court of appeals has aptly pointed out, criminal statutes should inform citizens of average intelligence what activity is being forbidden. *United States v. Harriss* (1954), 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989, 996. In light of the foregoing, we will not construe the language of R.C. 2923.17(A) in a vacuum. Unless the mental state of "knowingly" in R.C. 2923.17(A) extends beyond the element of possession to the object of possession, *i.e.,* dangerous ordnance, then the statute does very little to put citizens on notice of those activities prohibited by law.

{¶ 20} Moreover, any other holding limiting the mental state required for culpability in R.C. 2923.17(A) results in a form of strict criminal liability. Any statute, R.C. 2923.17(A) included, wherein a culpable mental state is expressly set forth can never impose strict liability. Consequently, if we were to construe the mental state of "knowingly" as modifying only the element of possession in R.C. 2923.17(A), the practical effect would be imposition of strict criminal liability in regard to the "dangerous ordnance" element of the statute.

{¶ 21} It is clearly within the province of the General Assembly to specify the *mens rea* required for each element of an offense. Further, it is within the power of the General Assembly to enact legislation with the purpose to impose strict criminal liability. R.C. 2901.21(B) provides:

"When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly

8

indicates a purpose to impose strict criminal liability, recklessness is sufficient culpability to commit the offense."

{¶ 22} We do not believe it was the intent of the General Assembly to impose strict criminal liability regarding the "dangerous ordnance" element of R.C. 2923.17(A). We note that the General Assembly did indeed specify a mental state, the *mens rea* of "knowingly," in promulgating R.C. 2923.17(A). Clearly, different elements of the same offense can require different mental states. R.C. 2901.21(A)(2). However, nothing in the language of the statute would lead us to conclude that the General Assembly *plainly indicated* its intention to impose strict criminal liability in determining whether there is a violation of R.C. 2923.17(A). " '[T]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.' " *United States v. United States Gypsum Co.* (1978), 438 U.S. 422, 436, 98 S.Ct. 2864, 2873, 57 L.Ed.2d 854, 869, quoting *Dennis v. United States* (1951), 341 U.S. 494, 500, 71 S.Ct. 857, 862, 95 L.Ed. 1137, 1147. Further, we must give effect to the words used in a statute. *Bernardini*, 58 Ohio St.2d at 4, 12 O.O.3d at 3, 387 N.E.2d at 1224. Were we to interpret the language of R.C. 2923.17(A) any other way, we would not be construing the statute as written.

{¶ 23} We are, however, at odds with the court of appeals' analysis regarding the degree of knowledge required to sustain a conviction for unlawful possession of dangerous ordnance. In one instance the court of appeals holds that "the state must prove that one accused of violating R.C. 2923.17(A) had knowledge of the facts that made his conduct illegal. In this case, that means that the state had to prove that [appellee] *knew* that his shotgun had a barrel less than eighteen inches long." (Emphasis *sic*.) The court of appeals then appears to soften its stance when it subsequently indicates that in prosecutions for unlawful possession of dangerous ordnance, the trial court is allowed to make permissible inferences of knowledge in light of a defendant's use, familiarity (ownership), and possession of the weapon,

9

as well as the actual physical appearance of the weapon. Our concern with this issue is based primarily on the difficulties inherent in determining a defendant's subjective knowledge.

{¶ 24} R.C. 2901.21(A)(2) provides that a person is not guilty of a criminal offense unless "[h]e has the requisite degree of culpability for *each element as to which a culpable mental state is specified* by the section defining the offense." (Emphasis added.) Essentially, the consideration becomes a question of the threshold level of knowledge necessary to find a violation of R.C. 2923.17(A).

{¶ 25} Given the statutory definition of "knowingly" found in R.C. 2901.22(B), we find that the court of appeals was in error when it required the state to prove that appellee knew that the barrel of his shotgun was less than eighteen inches long. We believe that this degree of knowledge is beyond the standard required by R.C. 2901.22(B). Thus, we believe that the definition of "knowingly" found in R.C. 2901.22(B) does not require the state to show that a defendant knew the *specific* characteristics of the item possessed that made it a dangerous ordnance. Had the General Assembly intended to require the state to carry such a heavy burden, it could have easily so stated.

{¶ 26} R.C. 2923.17(A) contains a flat prohibition against possession of dangerous ordnance. Beyond the weapon under consideration here, R.C. 2923.17(A) prohibits possession of certain firearms, explosives and incendiary devices and, among other items, rocket launchers, torpedoes, and firearm silencers, as well as certain specified materials including dynamite, TNT, and blasting powder. See R.C. 2923.11(K). In regulating such items, the General Assembly obviously had in mind the purpose of protecting and promoting the general safety, health, and well-being of the community. Therefore, in determining whether a defendant "knowingly" possessed a dangerous ordnance, we construe R.C. 2923.17(A) as requiring that the state must prove that a defendant know or be aware of the probability that the item in his possession is dangerous.

**{¶ 27}** Regarding the burden of proof, the court of appeals correctly noted that permissible inferences of knowledge, based at least in part upon fact, could prove an essential element of the offense. See, generally, *Hurt v. Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 329, 58 O.O. 122, 130 N.E.2d 820, paragraph two of the syllabus. Therefore, if the accused did not know for certain that the item in his possession was dangerous ordnance, the state can still show culpability by objective demonstrations of the defendant's mental state.

**{¶ 28}** In light of the foregoing, we believe that there was ample evidence before the trial court to sustain appellee's conviction for unlawful possession of dangerous ordnance. The trial court held in this matter that "[t]he State did *not* prove that [appellee] knew, or was aware of the probability, that the barrel of his shotgun was less than eighteen inches long." (Emphasis *sic*.) The court of appeals concluded that as a result of the trial court's determination of this factual question, the state had not met its burden of proving all of the essential elements of the offense beyond a reasonable doubt. However, based upon our determination that the state was not required to show that appellee knew that the barrel of his weapon was less than eighteen inches long, we reverse the court of appeals on this issue. The record before this court established that appellee was discovered while in possession of a shotgun. The barrel of the shotgun was measured by experts from the state and defense and found to be less than eighteen inches in length. The defense's expert indicated that the stock of the shotgun was cut off. Finally, when surrendering his weapon, appellee accidentally discharged the shotgun and according to the police officers who arrested appellee, the barrel of the shotgun exploded when the gun fired. The evidence submitted for review was sufficient to prove that appellee was knowingly in possession of dangerous ordnance. We, therefore, reinstate appellee's conviction and sentence.

**{¶ 29}** One final thought. We share the concern of the United States Supreme Court in *Staples* of " 'criminaliz[ing] a broad range of apparently innocent

conduct.' " *Staples,* 511 U.S. at 610, 114 S.Ct. at 1799, 128 L.Ed.2d at 619, quoting *Liparota v. United States* (1985), 471 U.S. 419, 426, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434, 440. In some situations, *e.g.,* those involving a rocket launcher, grenade, or torpedo, it will be quite easy to determine whether someone is in knowing possession of dangerous ordnance. In other circumstances, *e.g.,* nitroglycerin or picric acid, knowing possession will not be so readily apparent. In those situations where a defendant, in good faith, has no way of determining that the item in his possession is dangerous or hazardous, he or she should not be subject to prosecution under R.C. 2923.17(A). Entirely innocent conduct should not be punishable.

{¶ 30} Accordingly, we reverse the judgment of the court of appeals and reinstate appellee's conviction and sentence.

*Judgment reversed.*

MOYER, C.J., RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK, J., concurs in judgment only.

LUNDBERG STRATTON, J., concurs in judgment only.

————————————

**COOK, J., concurring in judgment only.**

{¶ 31} I agree with the majority's reversal of the court of appeals' decision and its conclusion that defendant's conviction should be reinstated. But I do so for different reasons. I agree instead with the trial court's conclusion that the word "knowingly" modifies only the verbs "acquire, have, carry, [and] use" and not the words "dangerous ordnance."

————————————