DECISION AND JUDGMENT ENTRY
{¶ 1} The Scioto County Juvenile Court declared Johnnie Carter to be a delinquent child for breaking and entering and subsequently transferred the case to the Jackson County Juvenile Court for disposition in conjunction with another matter. Carter now appeals the adjudication of delinquency, arguing that the court erred in admitting the victim's in-court identification into evidence. He contends the pre-trial show-up at the victim's house tainted the victim's subsequent in-court identification. We conclude Carter waived this argument by failing to file objections to the magistrate's decision. However, even if he had preserved the issue for appeal, it would have no merit. After considering the totality of the circumstances, including the victim's opportunity to view Carter at the time of the crime and the short period of time between the crime and the show-up, we conclude the victim's identification of Carter is reliable. Thus, the court did not err in admitting the in-court identification into evidence.
 {¶ 2} Carter also argues that his delinquency adjudication for breaking and entering is against the weight of the evidence and not supported by sufficient evidence. Specifically, he argues the state failed to prove that he used force, stealth, or deception to trespass in the victim's workshop. Again, we conclude that Carter waived these issues by failing to file objections to the magistrate's decision. However, even if he had not waived them, they would have no merit. Based on the victim's testimony, the trier of fact could reasonably infer that Carter entered the victim's workshop unannounced and under the cover of darkness. These circumstances are sufficient to establish stealth.
 {¶ 3} In addition to appealing his delinquency adjudication, Carter appeals the disposition entered by the Jackson County Juvenile Court. Carter contends the court erred in ordering him to pay court costs. Specifically, he argues that the court should have conducted a hearing to determine if he was able to pay court costs. However, R.C. 2152.20(C) does not require the court to conduct a hearing on this issue. Rather, R.C. 2152.20(C) gives the court discretion to conduct a hearing. Accordingly, the court did not err by failing to conduct a hearing to determine if Carter was able to pay court costs. Carter also argues that since he is indigent, the court should have considered imposing a term of community service instead of court costs. R.C. 2152.20(D) requires the juvenile court to consider imposing a term of community service in lieu of a financial sanction if the delinquent child is indigent. But, because Carter did not apprise the court of his indigent status, we conclude the court did not err by failing to consider imposing a term of community service instead of court costs.
 {¶ 4} Finally, Carter argues that he received ineffective assistance of counsel at both his adjudicatory hearing and his dispositional hearing. Carter contends his defense counsel in the Scioto County proceeding was ineffective for failing to request a Juv. R. 29(F)(1) dismissal at the close of the state's case. Because the state presented sufficient evidence to support a finding of delinquency, a request for dismissal would have been fruitless. Thus, Carter's defense counsel was not ineffective in this regard. Carter also argues that his defense counsel in the Jackson County proceeding was ineffective for failing to object to the imposition of court costs. We agree. We conclude that Carter's defense counsel acted deficiently by failing to raise the issue of Carter's indigent status at the dispositional hearing. Moreover, we presume that this failure prejudiced Carter's defense since as a result of counsel's failure to apprise the court of Carter's indigent status, the court did not engage in the proper analysis before imposing court costs.
 {¶ 5} Johnny and Rhonda Harrison live in Oak Hill, Ohio, which is located in Jackson County. One night in late October 2003, the Harrisons were asleep in bed when they heard a noise in their garage. The Harrisons immediately rushed to the garage to investigate. When Mr. Harrison opened the door to the garage, he saw two young men standing there. The young men fled as soon as they saw Mr. Harrison. Mrs. Harrison called the police and gave them a description of the young men. After an investigation, the state filed a complaint in the Jackson County Juvenile Court alleging that Johnnie Carter was a delinquent child for committing a burglary.
 {¶ 6} Gaylan Patrick lives in Wheelersburg, Ohio, which is located in Scioto County. One night in April 2004, Mr. Patrick was watching television when his wife informed him that their outdoor motion lights and vehicle dome lights were on. Mr. Patrick grabbed his gun, turned off the outdoor lights, and ran outside. Upon arriving outside, Mr. Patrick discovered that someone had broken into his vehicles. He returned inside and told his wife to call the police. He then turned the outdoor lights back on and went outside to wait for the police.
 {¶ 7} While waiting for the police to arrive, Mr. Patrick noticed a young man walking through his yard. The young man was carrying Mr. Patrick's fire extinguisher, which is normally kept in a workshop behind the house. Mr. Patrick trained his gun on the young man and ordered him to put the fire extinguisher down, but the young man refused. Mr. Patrick repeated the order a second time. Again, the young man refused. Finally, after Mr. Patrick repeated the order a third time, the young man complied. Mr. Patrick then ordered the young man to get down on his knees. As the young man began to kneel, Mr. Patrick's neighbors emerged from their house causing Mr. Patrick to become momentarily distracted. The young man took advantage of the opportunity and fled.
 {¶ 8} Captain Murphy of the Scioto County Sheriff's Office arrived on the scene moments later. Upon learning that the young man had fled, Captain Murphy left to search the surrounding areas. Shortly after Captain Murphy left, Deputy Triggs arrived. Mr. Patrick informed Deputy Triggs that he thought the young man had gotten into a car. After a neighbor provided Deputy Triggs with a description of the car, the deputy sent a description of the car and the young man over the airwaves. Ten minutes later, Deputy Triggs received a radio call informing him that another deputy had stopped the car. Deputy Triggs proceeded to that area where he learned that the car contained three people — a young lady, a young man, and Carter. Carter and the other young man denied any knowledge of the incident that occurred at Mr. Patrick's house. Since Carter matched the description given by Mr. Patrick, Deputy Triggs placed him in the back of his police cruiser. Deputy Triggs and Captain Murphy then returned to Mr. Patrick's house. When they arrived, Captain Murphy parked his vehicle so that the headlights shone in Deputy Trigg's cruiser. Captain Murphy informed Mr. Patrick that they had a suspect and asked Mr. Patrick if he could identify the individual in the back of the cruiser. Mr. Patrick immediately identified Carter as the person he saw carrying his fire extinguisher.
 {¶ 9} The next day, the state filed a complaint in the Scioto County Juvenile Court alleging that Johnnie Carter was a delinquent child for committing a breaking and entering. A magistrate adjudicated Carter a delinquent child for having committed a breaking and entering. The court subsequently adopted the magistrate's decision and transferred the case to the Jackson County Juvenile Court for disposition.
 {¶ 10} One month later, Carter appeared in the Jackson County Juvenile Court for an adjudicatory hearing on his burglary charge and a dispositional hearing in his breaking and entering case. At that time, Carter entered an admission to a reduced charge of attempted burglary. The juvenile court then proceeded to disposition in both cases. The court ordered Carter committed to the Department of Youth Services for a minimum of six months on each count, the sentences to run consecutively. It also ordered Carter to pay court costs of $80.00 in each case. Carter now appeals the Scioto County Juvenile Court's delinquency adjudication and the Jackson County Juvenile Court's disposition. Although Carter filed notices of appeal in each case, at Carter's request, we have consolidated the two cases. Thus, we proceed to consider the following assignments of error: "ASSIGNMENT OFERROR NO. 1 — The trial court violated Johnnie Carter's right to due process and a fair trial under the Fifth andFourteenth Amendments to the United States Constitution, Article One, Section Ten and Article One, Section Sixteen of the Ohio Constitution, and Juv. R. 29(E)(4) when it adjudicated him delinquent of breaking and entering on the basis of unduly suggestive and unreliable eyewitness identification. ASSIGNMENTOF ERROR NO. 2 — The trial court violated Johnnie Carter's right to due process under the Fifth andFourteenth Amendments to the United States Constitution, Article One, Section Sixteen of the Ohio Constitution, and Juv. R. 29(E)(4) when it adjudicated him delinquent of breaking and entering absent proof of every element of the charge against him by sufficient, competent, and credible evidence. ASSIGNMENT OF ERROR NO. 3 — The trial court violated Johnnie Carter's right to due process under the Fifth andFourteenth Amendments to the United States Constitution and Article One, Section Sixteen of the Ohio Constitution when it adjudicated him delinquent of breaking and entering, when that finding was against the manifest weight of the evidence.ASSIGNMENT OF ERROR NO. 4 — The trial court erred when it failed to hold a hearing to determine whether Johnnie Carter, an indigent juvenile, was able to pay the sanctions imposed by the juvenile court and failed to consider community service in lieu of the financial sanctions in violation of R.C. 2152.20.ASSIGNMENT OF ERROR NO. 5 — Johnnie Carter was denied his constitutional right to effective assistance of counsel under theSixth and Fourteenth Amendments to the United States Constitution
and Article One, Sections Ten and Sixteen of the Ohio Constitution when his attorney failed to request a Juv. R. 29(F)(1) dismissal at the end of the state's case and failed to object to the juvenile court's improper imposition of court costs."
 {¶ 11} In his first assignment of error, Carter contends the Scioto County Juvenile Court erred in admitting Mr. Patrick's in-court identification into evidence. Although Carter does not challenge the admissibility of Mr. Patrick's out-of-court identification, the standard used to determine the admissibility of an in-court identification is almost identical to the standard used to determine the admissibility of an out-of-court identification. See State v. Woolum (Aug. 19, 1992), Ross App. No. 1840. Thus, the result would be the same in either instance.
 {¶ 12} In contesting Mr. Patrick's in-court identification, Carter argues that the one-on-one show-up at Mr. Patrick's house was so impermissibly suggestive that it created a substantial likelihood of irreparable misidentification. He argues that the pretrial show-up tainted Mr. Patrick's in-court identification, making it unreliable. The state, on the other hand, argues that Mr. Patrick's identification of Carter is reliable under the totality of the circumstances.
 {¶ 13} The record indicates that Carter failed to file a motion under Juv. R. 22(D)(3) to suppress the identification testimony. Carter also failed to object to the identification testimony at trial. See Evid. R. 103(A)(1). More importantly, however, Carter failed to file objections to the magistrate's decision adjudicating him a delinquent child. Under Juv. R. 40(E)(3)(a), a party must file written objections to the magistrate's decision within fourteen days. The failure to file written objections challenging a finding of fact or conclusion of law precludes a party from assigning as error on appeal the court's adoption of that finding or conclusion. See Juv. R. 40(E)(3)(d). Thus, Carter's failure to object to the magistrate's decision prevents him from raising assignments of error related to that decision, other than as plain error. See In re Ohm (May 29, 1998), Ross App. No. 97CA2290; In re Harris, Franklin App. No. 02AP-1188, 2003-Ohio-2485, ¶ 5; In re Stanford, Summit App. No. 20921, 2002-Ohio-3755, ¶ 6. However, even if Carter had not waived this error, we would find it to be meritless, thus eliminating the need for a plain error analysis.
 {¶ 14} Generally, identification testimony is admissible unless the identification procedure was so impermissibly suggestive that it created a substantial likelihood of irreparable misidentification. Simmons v. United States (1968),390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247; State v.Barnett (1990), 67 Ohio App.3d 760, 588 N.E.2d 887. Moreover, the fact that the identification procedure contains notable flaws does not, per se, preclude admission of the subsequent in-court identification. State v. Moody (1978), 55 Ohio St.2d 64, 67,377 N.E.2d 1008; State v. Merrill (1984), 22 Ohio App.3d 119,121, 489 N.E.2d 1057. As noted in Manson v. Brathwaite (1977),432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140, "* * * reliability is the linchpin in determining the admissibility of identification testimony * * *." Even if the identification procedure was suggestive, the subsequent identification is admissible so long as it is reliable. Manson; Moody. The factors to be considered in determining reliability include "* * * the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."Neil v. Biggers (1972), 409 U.S. 188, 199, 93 S.Ct. 375,34 L.Ed.2d 401.
 {¶ 15} The practice of showing suspects to persons singly, and not as part of a line-up, has been widely criticized. SeeState v. Gross, 97 Ohio St.3d 121, 127, 2002-Ohio-5524,776 N.E.2d 1061; State v. Broom (1988), 40 Ohio St.3d 277, 284,533 N.E.2d 682, quoting Stovall v. Denno (1967), 388 U.S. 293, 302,87 S.Ct. 1967, 18 L.Ed.2d 1199. See, also, State v. Barnett
(1990), 67 Ohio App.3d 760, 768, 588 N.E.2d 887. However, the use of a one-on-one show-up is not per se improper. Indeed, the Supreme Court of Ohio has stated: "There is no prohibition against a viewing of a suspect alone in what is called a `one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy."State v. Madison (1980), 64 Ohio St.2d 322, 332,415 N.E.2d 272, quoting Bates v. United States (D.C. Cir. 1968),405 F.2d 1104. The Madison Court recognized that the crucial issue in the case of a one-onone show-up is "whether, based on the totality of the circumstances, there is a very substantial likelihood of misidentification." Madison, citing Neil,
supra. See, also, Gross, supra.
 {¶ 16} Mr. Patrick noticed Carter in his yard at about 10:15 or 10:30 p.m. Although it was dark outside, Mr. Patrick's outdoor lights were on. When Mr. Patrick first noticed Carter, Carter was only six to eight feet away from him. Additionally, Mr. Patrick held Carter at gunpoint for about five minutes. Mr. Patrick testified that he was wearing his glasses the entire time and that he has no problem seeing at night when wearing his glasses.
 {¶ 17} Mr. Patrick provided Deputy Triggs with a general description of the suspect including a description of his facial hair and clothing. Deputy Triggs testified that Carter matched the description that Mr. Patrick gave. The one-on-one show-up in which Mr. Patrick identified Carter occurred within an hour of when he first saw Carter. According to Captain Murphy, Mr. Patrick immediately identified Carter as the person he saw in his yard.
 {¶ 18} Given the totality of the circumstances, we are not convinced that the show-up procedure in the present case created a "very substantial likelihood of irreparable misidentification." See Simmons, supra. Mr. Patrick had ample opportunity to view Carter at the time of the crime. Moreover, his attention would have been focused on Carter since he was holding Carter at gunpoint. Captain Murphy and Deputy Triggs conducted the show-up within an hour of when Mr. Patrick first saw Carter. At the show-up, Mr. Patrick immediately identified Carter as the person he saw in his yard. Based on the evidence, we conclude that Mr. Patrick's identification of Carter is reliable. Thus, the court did not err in admitting the in-court identification into evidence.
 {¶ 19} Because Carter's second and third assignments of error are related, we will address them together. Here, Carter argues that his conviction is against the manifest weight of the evidence and not supported by sufficient evidence. Specifically, he argues the state failed to prove that he used force, stealth, or deception to trespass in Mr. Patrick's workshop.
 {¶ 20} Again, Carter's failure to object to the magistrate's decision waives any error related to that decision, except for plain error. See Juv. R. 40(E)(3)(d); In re Ohm, supra. However, even if Carter's arguments were properly before this court, we would find them to be meritless, again obviating the need for a plain error analysis.
 {¶ 21} A trial court may enter a finding of delinquency when the evidence demonstrates, beyond a reasonable doubt, that the child committed an act that would constitute a crime if committed by an adult. R.C. 2151.35(A); Juv. R. 29(E)(4). Thus, when reviewing the sufficiency of the evidence in a juvenile context, we apply the same standard of review applicable to criminal convictions. See In re Watson (1989), 47 Ohio St.3d 86, 91,548 N.E.2d 210. Our function when reviewing the sufficiency of the evidence is to examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.Id., citing Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 22} The legal concepts of sufficiency and weight of the evidence are different. State v. Thompkins, 78 Ohio St.3d 380,386, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. Thus, even if we conclude that a conviction is supported by sufficient evidence, we must still address the weight of the evidence, for it is possible that the evidence may be legally sufficient to go to the jury, yet be so logically unpersuasive that it cannot support a conviction. See State v. Robinson
(1955), 162 Ohio St. 486, 487, 124 N.E.2d 148.
 {¶ 23} Our function when reviewing the weight of the evidence is to determine whether the greater amount of the credible evidence supports the verdict. Thompkins, 78 Ohio St.3d at 387. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id., citing Statev. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. If we find that the fact finder clearly lost its way, we must reverse the conviction and order a new trial. Id. On the other hand, we will not reverse a conviction so long as the state presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. State v. Getsy,84 Ohio St.3d 180, 193-94, 1998-Ohio-533, 702 N.E.2d 866. In conducting our review, we are guided by the presumption that the trier of fact "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
 {¶ 24} The juvenile court adjudicated Carter delinquent by reason of breaking and entering. R.C. 2911.13(A) defines breaking and entering as follows: "No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense * * *." Stealth involves a secret, sly, or clandestine act to avoid discovery and gain entrance into or remain within a structure of another without permission. See State v. Lane (1976),50 Ohio App.2d 41,47,361 N.E.2d 535; State v. Ward (1993),85 Ohio App.3d 537,540,620 N.E.2d 168. See, also, Black's Law Dictionary (6 Ed. 1990) 1413.
 {¶ 25} The evidence indicates that Mr. Patrick first noticed Carter in his yard at about 10:15 or 10:30 p.m. At the time, Carter was carrying Mr. Patrick's fire extinguisher. Mr. Patrick testified that he keeps the fire extinguisher in his workshop, which is a separate building behind his house. Mr. Patrick testified that Carter must have removed the fire extinguisher from the workshop since "it's always been in there." When the court asked Deputy Triggs about the condition of the workshop, Deputy Triggs indicated that "[t]he door was opened * * * and it looked like they just walked in."
 {¶ 26} There is no evidence that Carter entered Mr. Patrick's workshop through the use of force or deception. However, a reasonable trier of fact could find that Carter used stealth to enter the workshop. The evidence indicates that Carter entered Mr. Patrick's workshop unannounced and under the cover of darkness. See, e.g., State v. Biddlecom (Aug. 6, 2000), Cuyahoga App. No. 76087 (Evidence sufficient to establish stealth where appellant entered open garage door under the cover of darkness.); State v. Montgomery (May 8, 1995), Warren App. No. CA94-09-082 (Evidence sufficient to establish the element of stealth where appellant entered garage during the middle of the night, under the cover of darkness.); State v. Reeves (March 12, 1999), Montgomery App. No. 16987 (Evidence sufficient to establish stealth where appellant entered the home at night through the back door.) Moreover, he had no legitimate reason for being in the workshop or for having Mr. Patrick's fire extinguisher in his possession. Given this evidence, a reasonable trier of fact could conclude that Carter's unannounced entry into the workshop under the cover of darkness was a clandestine act designed to avoid detection. Thus, the state offered sufficient evidence to establish the element of stealth.
 {¶ 27} Additionally, we conclude that the court's delinquency adjudication is not against the manifest weight of the evidence. Mr. Patrick testified that he noticed a young man walking through his yard at about 10:15 or 10:30 p.m. The young man was carrying Mr. Patrick's fire extinguisher. At trial, Mr. Patrick identified Carter as the young man he saw with his fire extinguisher. He testified that the fire extinguisher is always kept in his workshop and therefore, Carter must have removed it from the workshop.
 {¶ 28} Based on Mr. Patrick's testimony, a reasonable trier of fact could find that Carter used stealth to enter Mr. Patrick's workshop and steal his fire extinguisher. In addition, the trier of fact could infer from Carter's theft of the fire extinguisher that Carter initially entered the workshop in order to "commit therein [a] theft offense". See R.C. 2911.13(A). Thus, we cannot say that the Scioto County Juvenile Court clearly lost its way and created a manifest miscarriage of justice when it adjudicated Carter delinquent for committing a breaking and entering. Therefore, even if Carter had preserved these assignments of error for appeal, we would find them to be meritless.
 {¶ 29} In his fourth assignment of error, Carter contends the Jackson County Juvenile Court erred in imposing court costs as part of his disposition. He argues the court should have conducted a hearing to determine if he was able to pay the court costs. Additionally, he argues that since he is indigent, the court should have considered imposing a term of community service instead of costs. The state, on the other hand, argues that the court is not required to hold a hearing to determine a delinquent child's ability to pay court costs. The state argues that the decision whether to conduct such a hearing is within the court's discretion.
 {¶ 30} Because Carter has not raised a constitutional challenge, resolution of his argument requires us to engage solely in statutory construction. The cornerstone of statutory construction is legislative intent. State v. Jordan,89 Ohio St.3d 488, 491, 2000-Ohio-225, 733 N.E.2d 601. To determine legislative intent, a court must first look to the language of the statute. Columbus City School Dist. Bd. Of Edn. v. Wilkins,101 Ohio St.3d 112, 116, 2004-Ohio-296, 802 N.E.2d 637;Provident Bank v. Wood (1973), 36 Ohio St.2d 101, 105,304 N.E.2d 378. If the statutory language is clear and unambiguous, the court need not resort to the rules of statutory construction.Storer Communications, Inc. v. Limbach (1988),37 Ohio St.3d 193, 194, 525 N.E.2d 466; Sears v. Weimer (1944),143 Ohio St. 312, 55 N.E.2d 413, paragraph five of the syllabus. "An unambiguous statute is to be applied, not interpreted." Sears;Vought Industries, Inc. v. Tracy, 72 Ohio St.3d 261, 265,1995-Ohio-18, 648 N.E.2d 1364. To interpret language that is already plain is to legislate, which is not a function of the court. Sears, 143 Ohio St. at 316.
 {¶ 31} R.C. 2152.20(A)(2), which governs the imposition of costs, provides that the juvenile court may require a child who is adjudicated delinquent to pay costs. Furthermore, R.C. 2152.20
provides * * *: "(C) The court may hold a hearing if necessary to determine whether a child is able to pay a sanction under this section. (D) If a child who is adjudicated a delinquent child is indigent, the court shall consider imposing a term of community service under division (A) of section 2152.19 of the Revised Code in lieu of imposing a financial sanction under this section. * * * If a child fails to pay a financial sanction imposed under this section, the court may impose a term of community service in lieu of the sanction."
 {¶ 32} Carter argues that R.C. 2152.20(C) requires the court to hold a hearing to determine whether a delinquent child is able to pay a financial sanction such as court costs. However, R.C. 2152.20(C) states that "[t]he court may hold a hearing if necessary * * *." (Emphasis added.) In statutory construction, the word "may" is construed as optional, permissive, or discretionary. See In re Fleming (1991), 76 Ohio App.3d 30, 38,600 N.E.2d 1112, citing Dorrian v. Scioto Conserv. Dist.
(1971), 27 Ohio St.2d 102, 107, 271 N.E.2d 834. The general assembly's use of the word "may" in R.C. 2152.20(C) indicates that a hearing is optional, not required. Thus, R.C. 2152.20(C) gives the juvenile court discretion to hold a hearing. See In reMcClanahan, Tuscarawas App. No. 2004AP10004, 2004-Ohio-4113, ¶ 8.
 {¶ 33} Carter also argues that since he is indigent, the court should have considered imposing a term of community service in lieu of costs. R.C. 2152.20(D) provides: "If a child who is adjudicated a delinquent child is indigent, the court shall
consider imposing a term of community service * * * in lieu of imposing a financial sanction under this section." (Emphasis added.) In statutory construction, the word "shall" is generally construed as mandatory. See Dorrian, 27 Ohio St.2d 102, paragraph one of the syllabus. The general assembly's use of the word "shall" in R.C. 2152.20(D) indicates a mandatory requirement, something the court must do. Accordingly, R.C. 2152.20(D) requires the court to consider imposing a term of community service instead of a financial sanction if the delinquent child is indigent. However, R.C. 2152.20(D) does not require the court to impose a term of community service in lieu of a financial sanction; it simply indicates that the court must consider it.
 {¶ 34} Our review of the record indicates that Carter did not apprise the juvenile court of his indigent status at the dispositional hearing. Nor did he ask the court to waive the court costs or impose a term of community service in lieu of the court costs. Given Carter's failure to apprise the court of his indigent status, we cannot say the juvenile court erred in failing to consider imposing a term of community service instead of costs.
 {¶ 35} Carter argues that the court should have known that he was indigent since he had appointed counsel. However, the juvenile court cannot be expected to know the financial status of every delinquent child that appears before it for disposition. Carter was in a much better position than the court to have this information. Thus, the burden fell on Carter to raise the issue of his indigent status with the court. But, see, State v.Clark, Pickaway App. No. 02CA12, 2002-Ohio-6684, ¶ 21 (indicating that an affidavit of indigency for purposes of obtaining counsel is sufficient to establish indigency for purposes of imposing court costs.), overruled on other grounds,State v. White, 103 Ohio St.3d 580, 2004-Ohio-5989,817 N.E.2d 393. Had he done so, the court could have considered his ability to pay the costs and considered imposing a term of community service instead of costs.
 {¶ 36} In summary, we conclude the court did not err by failing to conduct a hearing to determine Carter's ability to pay the costs since such a hearing is discretionary under R.C. 2152.20(C). Moreover, because Carter failed to apprise the court of his indigent status, we conclude the court did not err by failing to consider imposing a term of community service in lieu of court costs. Accordingly, we conclude that Carter's assignment of error lacks merit.
 {¶ 37} In his final assignment of error, Carter argues that he received ineffective assistance of counsel at both his adjudicatory hearing and his dispositional hearing.
 {¶ 38} Reversal of a conviction for ineffective assistance of counsel requires the defendant to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. State v. Smith, 89 Ohio St.3d 323, 327,2000-Ohio-166, 731 N.E.2d 645, citing Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; Statev. Bradley (1989), 42 Ohio St.3d 136, 142, 538 N.E.3d 373. Defense counsel's performance must fall below an objective standard of reasonableness to be deficient in terms of ineffective assistance of counsel. See Bradley. Moreover, the defendant must show that there exists a reasonable probability that, were it not for counsel's errors, the results of the proceeding would have been different. State v. White,82 Ohio St.3d 16, 23, 1998-Ohio-363, 693 N.E.2d 772. If one component of the test disposes of an ineffective assistance of counsel claim, it is not necessary to address both components. Strickland;Bradley.
 {¶ 39} Carter argues that his defense counsel in the Scioto County proceeding was deficient for failing to request a Juv. R. 29(F)(1) dismissal at the close of the state's case. In response, the state argues that Carter did not suffer prejudice as a result of his defense counsel's failure to request a Juv. R. 29(F)(1) dismissal.
 {¶ 40} Juv. R. 29(F) provides: "Upon the determination of the issues the court shall do one of the following: (1) If the allegations of the complaint, indictment, or information were not proven, dismiss the complaint." Thus, a request for dismissal under Juv. R. 29(F)(1) tests the sufficiency of the evidence. See, e.g., In re Williams (March 13, 1986), Cuyahoga App. No. 50315;In re Gilbert (Sept. 28, 1987), Butler App. No. CA86-10-144.
 {¶ 41} As our earlier discussion demonstrates, the state presented sufficient evidence to support a finding of delinquency. Thus, a request for dismissal under Juv. R. 29(F)(1) would have been fruitless. Defense counsel's failure to raise meritless issues does not constitute ineffective assistance of counsel. See State v. Hill (1996), 75 Ohio St.3d 195, 211,661 N.E.2d 1068; State v. Close, Washington App. No. 03CA30,2004-Ohio-1764, ¶ 34. Moreover, because the juvenile court would have denied the request for dismissal, Carter did not suffer any prejudice as a result of his defense counsel's failure to make the request. Accordingly, Carter's argument lacks merit.
 {¶ 42} Carter also argues that his defense counsel in the Jackson County proceeding was ineffective for failing to object to the imposition of court costs. We agree.
 {¶ 43} Carter's defense counsel was aware that the juvenile court had appointed him to represent Carter because Carter was indigent. Moreover, counsel would have had access to the case file from the Scioto County proceeding. That case file contained an affidavit of indigency filed about one month before the dispositional hearing. In the affidavit, Carter indicated that he did not have any assets or income. Given this evidence, we conclude that defense counsel was ineffective for failing to apprise the court of Carter's indigent status. Reasonable defense counsel faced with this evidence would have informed the court that his client was indigent and asked the court to either waive the court costs or impose a term of community service instead of court costs.
 {¶ 44} Having concluded that defense counsel's performance was deficient, we must now determine whether the deficient performance prejudiced Carter's defense. After considering the issue, we conclude that defense counsel's failure to apprise the court of Carter's indigent status prejudiced Carter's defense. Because defense counsel did not apprise the court of Carter's indigent status, the court did not engage in the proper analysis before imposing court costs. And while we could speculate about whether the juvenile court would have imposed court costs had it engaged in the proper analysis, it would be just that — speculation. In reality, we have no way of knowing whether the court would have imposed court costs on Carter if it had been aware of his indigent status. In the end, we conclude that defense counsel's failure to apprise the court of Carter's indigent status, which resulted in the juvenile court's failure to engage in the proper analysis, prejudiced Carter's defense. Accordingly, we reverse the Jackson County Juvenile Court's judgment and remand the matter for resentencing as to court costs. This decision in no way affects that portion of the judgment ordering Carter committed to the Department of Youth Services.
Judgment affirmed in part, reversed in part, and remanded.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND REMANDED, and that Appellee and Appellant split costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J.: Concurs in Judgment and Opinion as to Assignments of Error I, II, III, and V; Dissents as to Assignment of Error IV.
Abele, J.: Concurs in Judgment and Opinion as to Assignments of Error I, II, III, and V; Concurs in Judgment Only as to Assignment of Error IV.