O’Neill, J.,
dissenting.
{¶ 286} In State v. Kirkland, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, this court affirmed a death sentence despite its acknowledgment that the defendant’s penalty-phase hearing was unfair, based on its independent review of the sentence. Id. at ¶ 98 and ¶ 141-168. I dissented, pointing out that the court’s analysis and decision were in violation of Ring v. Arizona, 536 U.S. 584, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). See Kirkland at ¶ 201-204 (O’Neill, J., dissenting).
{¶ 287} The court repeats that error today, holding that while the trial court in this case failed to merge “duplicative [death] specifications,” majority opinion at ¶ 189, this court’s independent sentence review can “cure” any error as part of our “independent sentence review.” Id. I rejected this analysis in Kirkland and I reject it again. It is illogical and unsupported by the law. I do not believe that Osie’s choice to have his case heard by a three-judge panel resolves the issue. If there is inarguable and prejudicial error in the imposition of a death sentence, it should be elementary that a new sentencing is required. We do not engage in post hoc justification of the result when reviewing prison sentences. See State v. Whitfield, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, paragraph two of the syllabus (“Upon finding reversible error in the imposition of multiple punishments for allied offenses, a court of appeals must reverse the judgment of conviction and remand for a new sentencing hearing * * * ” [emphasis added]). This is a death sentence, and “good enough” is unacceptable.
{¶ 288} At the bottom line, a sentence of death should never have been imposed in this case. While acknowledging Osie’s contention that Williams’s murder stemmed from an argument between the two men that got out of hand, the majority suggests that because the “subject of that argument was Williams’s *186 intention to file charges,” it was proper to adopt “the inference that Osie’s purpose in stabbing Williams was to keep him from filing charges.” Majority opinion at ¶ 201. It is true that the factfinder may rely upon an inference to conclude that sufficient evidence of an offense has been presented. See State v. Jordan, 89 Ohio St.3d 488, 733 N.E.2d 601 (2000). But it is another thing altogether to conclude that the very same “inference” is also sufficient to justify the imposition of a death sentence. The majority makes a quantum leap in reaching its conclusion that the inference outweighs all of the mitigating evidence presented by the defendant beyond a reasonable doubt. This record simply does not provide any support for that decision.
{¶ 289} The defendant’s girlfriend was suspected of stealing approximately $18,000 from her employer, David Williams. She was the office manager at a struggling company and was thought to be using phony payroll checks to steal money. One of the checks for $375 was made out to the defendant, and he cashed it at a gas station in front of a video camera. The undisputed facts are that on the night of the murder, the defendant went to Williams’s house to attempt to persuade him not to report the thefts to the police. The state’s own jailhouse informant testified that the defendant had told him that prior to going to Williams’s house, he got high on cocaine and that defendant only went to Williams’s house to “talk [Williams] out of pressing charges.” The conversation became heated, and Williams indicated that the police would investigate the $375 check. When questioned by the police, the defendant lied multiple times but ultimately confessed to killing Williams. According to the informant, Donald Simpson Jr.:
I guess it had turned into Greg trying to talk him out of pressing charges, and I — he had said the conversation had come up that he was going to press charges on Greg himself, because one of the checks had been wrote and cashed at a Marathon gas station there on Cincinnati-Dayton and Tylersville. It had been wrote to Greg himself, and I guess at that point, he said that the conversation had got heated and that he had punched Dave, and then it just happened that, I mean before he knew it, he had got the knife and stabbed him. He had stabbed him like four or five times in the chest, and that then when he was laying there, that he freaked out, and so he rushed down and took the knife and sliced his throat.
{¶ 290} The defendant clearly deserves severe punishment — he admits he killed another. But the question before the three-judge panel was whether the motive behind the murder was to silence his girlfriend’s employer, who was *187 threatening to go to the police over her embezzlement of company funds. There were only two witnesses to the fight that turned fatal: the decedent and the defendant. And before the state of Ohio, in the name of its citizens, can take another life, it must demonstrate beyond a reasonable doubt that the motive to silence this witness was the driving force behind the fatal act. Other than the death; there is no direct evidence and precious little circumstantial evidence of that intent. Accordingly, I would hold as a matter of law that the state has failed in that endeavor. A reasonable interpretation of what happened here is that an ugly confrontation turned into a physical altercation that ended up with one person dying and another fleeing, and any basis for rejecting that interpretation can only be inferred from the killing itself. As a result, the same inference that provides the legal basis for convicting the defendant of aggravated murder also provides the basis for the specification making the defendant eligible for death. That is a legally insufficient process in a capital-murder case.
{¶ 291} The undisputed evidence is that the defendant initially went to Williams’s house to talk to him, not to kill him. To arrive at the majority’s tortured conclusion, the specific purpose to kill a witness to prevent him from testifying about a crime that has not yet even been reported to the police must be inferred from circumstances surrounding the killing. Have we really arrived at the point where we are willing to execute someone based upon an inference? And are we now ready to simply ignore the perfectly reasonable contrary view of the offense that the killing simply stemmed from an argument where the defendant, high on cocaine, lost control of himself?
{¶ 292} And ultimately, even if the answer to those questions is “yes,” simple justice demands that a speculative finding of inferred specific purpose cannot, standing alone, outweigh the mitigation evidence presented by the defendant. The evidence is undisputed that the defendant was a good, productive, and law-abiding member of society for many years. He consistently worked, volunteered for the benefit of the community, and raised two adult sons. In his lifetime he has only one prior conviction, for OVI. His four siblings, his sons, and his mother all love him and want him to be part of their lives even if he’s in prison.
{¶ 293} The roots of this crime stem from the virtually simultaneous collapse of the defendant’s marriage and the death of his father. These two events sent the defendant into a downward spiral that led to abuse of alcohol and cocaine, embezzlement from his mother, and finally the horrible murder of which he stands convicted. The defendant made good decisions for 45 years, bad decisions for three years, and awful decisions for one night.
{¶ 294} Given the undisputed evidence, our independent sentence review cannot support the conclusion that death, rather than life in prison with or without a chance of parole, is the appropriate sentence in this case. This is a *188 case of two men in a very contentious situation that got out of hand and that left one of them dead. In weighing mitigation versus aggravation, I am persuaded by the first 45 years of the defendant’s life, during which he kept a job, raised a family, and put two kids through college. The defendant is not someone who kills his mother-in-law and slashes his two children’s throats. See State v. Mammone, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051. The defendant is not someone who rapes two teenagers and then sets their bodies on fire. See State v. Kirkland, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818. No, the defendant is a man who went down the wrong path, with a tragic ending for Mr. Williams and his survivors. Society gets no benefit from executing this defendant, and his crimes are not the type of offenses that can even arguably justify the imposition of the punishment of death. I accordingly dissent.
Michael T. Gmoser, Butler County Prosecuting Attorney, Michael A. Oster Jr., Chief, Appellate Division, and Lina N. Alkamhawi, Assistant Prosecuting Attorney, for appellee.
Timothy Young, Ohio Public Defender, Pamela Prude-Smithers, Chief Counsel, Death Penalty Division, and Andrew King, Kelle Hinderer, and Robert K. Lowe, Assistant Public Defenders, for appellant.