DECISION AND JUDGMENT ENTRY
{¶ 1} Edward Close appeals the Washington County Court of Common Pleas' decision finding him guilty of felony rape, felony gross sexual imposition, and misdemeanor sexual imposition. Close asserts that, because the State was not surprised when its two witnesses/victims recanted their stories, the trial court erred in permitting the State to impeach the victims' testimony with their prior inconsistent statements. Because large portions of the victims' prior statements were admissible for other purposes, and because any error in allowing impeachment of the victims was harmless, we disagree. Close next asserts that the trial court erred in permitting evidence of his confession when the State did not present any other admissible evidence tending to establish the corpus delicti of the crimes. Because we find that the State did present some admissible evidence tending to establish the corpus delicti of the crimes, we disagree. Close also asserts that his trial counsel was ineffective for failing to raise the issues Close presents in his first two assignments of error. We disagree, because any error related to impeachment was harmless, and any objection on basis of corpus delicti would have been fruitless. Finally, Close contends that the record does not contain sufficient evidence to sustain his convictions. Because Close's properly admitted confession constitutes sufficient evidence to support his convictions, we disagree. Accordingly, we overrule each of Close's assignments of error and affirm the judgment of the trial court.
 I {¶ 2} Close married his wife, Nina, in 1995. In 1998, Close adopted Nina's three children, Amy, Connie, and Devin. In July of 2002, the Washington County Grand Jury issued a ten count indictment against Close with regard to Amy and Connie, charging him with rape, gross sexual imposition, importuning, and sexual imposition. Close pled not guilty to the charges, and a trial to the bench ensued.
 {¶ 3} At trial, Amy testified that she left a letter in her aunt's van in March of 2002, shortly after her seventeenth birthday. Amy testified that that she used the letter to ask for help for her and her then thirteen year old sister, Connie. Amy testified that she wrote in the letter that her father was forcing her and Connie to flash their breasts to him before he would give them permission to do things.
 {¶ 4} Amy further testified that as a result of her letter, her uncle called her at work, came to her home in Beverly, spoke to her mother, and took her to his home in Columbus. Also as a result of the letter, Amy spoke with a detective and a Franklin County Children's Services caseworker in Columbus. Amy testified that she recalled telling those investigators that her father had touched her breasts over one hundred times and that he occasionally touched her vaginal area outside of her clothing. Amy then testified that none of the things she wrote in the letter or reported to investigators ever happened.
 {¶ 5} Connie testified that Washington County Children's Services caseworker Alice Stewart and Washington County Sheriff's Deputy Craig Brockmeier came to her school to interview her as a result of information they received from Amy's investigators in Columbus. Connie testified that she told Stewart and Deputy Brockmeier that her father performed oral sex on her once in her mother's bedroom, and that she did not have any clothing on at the time. She also testified that her father told her immediately after that "it was a mistake." Connie testified that she recalled telling the investigators that she was twelve years old at the time her father performed oral sex on her.
 {¶ 6} Connie also testified that she reported to the investigators that one night, after her father picked her up from a friend's birthday party in Lower Salem, she had intercourse with her father in his truck. Additionally, Connie testified that she told investigators that she had observed her father touch Amy's breasts under her clothing. Connie then testified that she now believes that the person who performed those sexual acts upon her was not Close. Connie stated that the acts were actually perpetrated by her biological father, whom she had last seen when she was four years old.
 {¶ 7} Stewart testified that, as a caseworker in the assessment unit of Washington County Children's Services, her primary job is to investigate reports of physical abuse, sexual abuse, or neglect of children. Stewart testified that a screening process takes place before she receives a referral to investigate allegations of abuse. Specifically, reports of abuse are taken by the intake department, and then the report is taken to a supervisor. If the supervisor determines that there is enough information in the report to warrant a follow-up, then the referral is passed on to Stewart in the assessment unit. Stewart testified that she received a referral on Amy and Connie Close in March of 2002. Stewart also testified that she, along with Deputy Brockmeier, interviewed Connie. Stewart described the details of the sexual abuse as reported to her by Connie.
 {¶ 8} Deputy Brockmeier testified that he participated in the interview of Connie and that, based upon the information he learned in that interview and some information he received from Franklin County, he located Close and asked Close to accompany him to the Beverly Police Department for an interview. Close agreed to an interview, and waived his Miranda rights.
 {¶ 9} The State introduced an audio tape of the interview at trial. During the interview, Close admits to occasionally making a joke of touching one of the girls' breasts or bottoms, asking them to show him their breasts, perhaps grabbing their crotch or breast while tickling or wrestling, and jokingly or accidentally pulling their shirts up or pants down. He admitted to jokingly making comments such as "Ooh, pretty booby."
 {¶ 10} Deputy Brockmeier told Close that Connie had described an incident, which she labeled a "mistake," that occurred between Close and Connie in his wife's bedroom. Close recognized the event Connie was referring to, and admitted that on one occasion he kissed Connie's breasts, legs, and belly, and crotch. He stated that Connie was naked during the incident, and that she was twelve years old at the time. He admitted that he probably touched her vagina with his fingers and lips. He stated that he told Connie immediately that it was a mistake.
 {¶ 11} When Deputy Brockmeier asked Close if Connie had ever touched his penis, Close described an incident when Connie touched his penis with her hands. He volunteered that the incident occurred in his truck after he picked her up from a party or dance in Lower Salem. Close denied having intercourse with Connie that night or at any other time.
 {¶ 12} Several witnesses testified that they believe Close to be of upstanding character, and that they have never observed him engage in inappropriate sexual behavior with his daughters. One of Close's witnesses, Joan Barton, testified that she has seen Close engage in inappropriate conduct with his daughters. Specifically, she stated that she observed him "french kiss" his daughters. Barton also testified that, in her experience as a sexually abused child, it is fairly natural for sexually abused children to make truthful allegations and later recant them.
 {¶ 13} Nina testified that Close is a hard-working and loving husband and father. Nina stated that she and Close have had many problems with Connie telling lies. In particular, Nina testified about Connie running away from home when she was twelve years old. After police helped them locate Connie at a friend's house, Connie made allegations that Close had performed oral sex upon her. Connie recanted her allegation shortly thereafter.
 {¶ 14} Nina also testified about the events that occurred as a result of Amy's letter and Connie's subsequent accusations. Nina testified that, after Deputy Brockmeier's interview of Close, she saw him and he told her that: he didn't know why he did "it;" he made a terrible mistake; and he was going to lose Nina and the girls as a result. Nina then testified that she believes that Close was not referring to sexually abusing the girls, but rather was referring to the confession he had just given.
 {¶ 15} Additionally, Close chose to testify. Close testified that his statements about the sexual acts he performed upon his daughters are false. He denied even jokingly touching the girls' breasts or asking them to flash him. He admitted that he could not explain why details he gave in his fictional accounts might closely match details given by his daughters in separate interviews. He admitted he did not know the details of his daughters' allegations at the time Deputy Brockmeier interviewed him. Finally, he testified that he was tired at the time of the interview due to his extensive work and volunteer obligations, and that he felt that telling Deputy Brockmeier false stories about inappropriate sexual conduct with his daughters would be "an easy way out, without committing suicide."
 {¶ 16} The trial court found Close guilty of one count of rape, a first-degree felony violation of R.C. 2907.02(A)(1)(b); two counts of gross sexual imposition, third-degree felony violations of R.C. 2907.05(A)(4); and three counts of sexual imposition, third-degree misdemeanor violations of R.C.2907.06(A)(4). The court determined Close to be a sexual offender, and sentenced him to nine years imprisonment.
 {¶ 17} Close appeals, asserting the following assignments of error: "I. The trial court committed plain error to the prejudice of the defendant in permitting the State to impeach its own witnesses, Amy Close and Connie Close, with prior inconsistent statements absent any showing of surprise and affirmative damage in violation of Evid.R. 607. II. The trial court committed plain error to the prejudice of the defendant when it permitted Detective Brockmeier to testify about defendant's alleged confession when there was absolutely no substantive evidence in the record to establish a corpus delicti. III. Defendant-appellant was denied his right to the effective assistance of counsel * * *. IV. There is insufficient evidence to sustain a conviction in this case."
 II {¶ 18} In his first assignment of error, Close contends that the trial court erred in allowing the State to impeach its own witnesses with their prior inconsistent statements. The State contends that it did not use Amy and Connie's prior statements to impeach them, but rather to establish some evidence of the corpus delicti of the crimes. Close did not object to the State's questioning of Amy and Connie with regard to their prior statements at trial.
 {¶ 19} The failure to promptly object and call any error to the attention of the trial court at a time when it could have been prevented or corrected amounts to a waiver of all but plain error. State v. Lott (1990), 51 Ohio St.3d 160, 174, citingState v. Gordon (1971), 28 Ohio St.2d 45, at paragraph two of the syllabus. Notice of plain error under Crim.R. 52(B) is to be taken with the "utmost of caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Barnes (2002), 94 Ohio St.3d 21, 27. Plain error should not be invoked unless it can be said that, but for the error, the outcome of the trial would have been different.State v. Jackson (2001), 92 Ohio St.3d 436, 438. In a trial to the bench, we presume that the trial court considered only the reliable, competent and probative evidence before it, unless the record affirmatively shows otherwise. Lott at 167.
 {¶ 20} Close implicitly asserts that the girls' statements to investigators constitute inadmissible hearsay, and that the only possible theory upon which the State could have questioned the girls regarding their statements is an impeachment theory. However, not all out of court statements are hearsay. Specifically, a statement is not hearsay if it is offered to prove that the declarant made it, rather than to prove the truth of its contents. State v. Williams (1988), 38 Ohio St.3d 346,348. Similarly, statements offered to explain an officer's conduct during the course of investigating a crime are not hearsay. State v. Blevins (1987), 36 Ohio App.3d 147, 149.
 {¶ 21} In this case, the State geared its examinations of Amy and Connie to first elicit testimony to prove that Amy sought help for her and her sister, and then to prove that they made allegations against Close. The State inquired about the events that occurred as a result of the statements they made to investigators, thereby eliciting testimony explaining the events following the allegations, including Amy's removal from the home, the interviews of Amy and Connie, Deputy Brockmeier's interview of Close, the implementation of an emergency safety plan, and the arrest of Close. To the extent that Amy and Connie's statements were offered to prove the fact that they made allegations and to explain investigators actions following their allegations, the trial court did not err in allowing it.
 {¶ 22} Additionally, Evid.R. 801(D)(1)(c) provides that a statement does not constitute hearsay when it relates to the identification of a person, if the circumstances demonstrate the reliability of the prior identification. Although we questioned the use of Evid.R. 801(D)(1)(c) with regard to close relatives inState v. Turvey (1992), 84 Ohio App.3d 724, 740, in this case the identity of the perpetrator was called into question by Connie's testimony that she now believes her biological father committed the abuse against her. Circumstances demonstrate the reliability of Connie's prior identification, particularly the fact that the details she provided to investigators matched the details Close provided in his confession. Therefore, Connie's prior statements to investigators were admissible pursuant to Evid.R. 801(D)(1)(c).
 {¶ 23} Otherwise inadmissible prior statements may be permitted under Evid.R. 607 for the limited purpose of impeachment. Evid.R. 607(A) provides that the party calling a witness may impeach that witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. In this case, the State acknowledged on the record that it anticipated that Amy and Connie would recant the allegations that they made to investigators. Thus, the State was not surprised by Amy or Connie's testimony, and therefore it could not use their prior statements to investigators for the purpose of impeaching them.
 {¶ 24} To the extent that the State used Amy or Connie's prior statements to impeach them, that use was improper. However, we find that any error in permitting the statements was harmless, and certainly did not amount to plain error. Based on the overwhelming other evidence of Close's guilt, we conclude that the outcome of the trial would not have been different without the impeachment of Amy and Connie with their prior statements. Accordingly, we overrule Close's first assignment of error.
 III {¶ 25} In his second assignment of error, Close contends that the trial court erred in admitting his tape-recorded confession. Close asserts that the State failed to produce any substantive evidence of the corpus delicti of the crimes, and therefore that the trial court should not have permitted the State to introduce his confession. Close moved to suppress his confession at trial on the grounds that it was involuntary, but did not seek to exclude the confession on corpus delicti grounds.
 {¶ 26} The corpus delicti of a crime is essentially the fact of the crime itself. It is comprised of (1) the act and (2) the criminal agency of the act. State v. Maranda (1916),94 Ohio St. 364, paragraph one of the syllabus. See, also, State v.Edwards (1976), 49 Ohio St.2d 31, 34; State v. Van Hook
(1988), 39 Ohio St.3d 256, 261. The state must produce independent evidence of the corpus delicti of a crime before the court may admit an extrajudicial confession. Maranda at paragraph two of the syllabus; State v. Haynes (1998),130 Ohio App.3d 31, 34.
 {¶ 27} "The quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a prima facie case. It is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged." Maranda at paragraph two of the syllabus; Haynes at 34. That evidence may be direct or circumstantial. Maranda at 371; State v. Nicely (1988), 39 Ohio St.3d 147, 154-155; Statev. Clark (1995), 106 Ohio App.3d 426, 431.
 {¶ 28} In State v. Ledford (Jan. 24, 2000), Clinton App. No. CA99-05-014, unreported, the defendant confessed to police that he raped a five-year-old boy. The child described the rape to his mother and other witnesses, but recanted his statements at trial. Although a medical examination of the child revealed no evidence of rape, the trial court found that the state produced some evidence tending to prove the material elements of rape. Specifically, the mother testified that her child spent the night at the defendant's apartment, that the child made a statement which caused her to call the police and take him to the hospital, and that the hospital staff examined the child's genitals.
 {¶ 29} As in Ledford, the victims in this case recanted their allegations of sexual abuse, but the record nonetheless contains some evidence of Close's crimes. The admissible evidence in the record includes Amy and Nina's combined testimony that Amy asked for help by writing a letter to her uncle in Columbus, and that as a result of the letter, Amy was taken out of the home and interviewed by a detective and Children's Services caseworker. Nina testified that, within three days, Children's Services required her to implement a "safety plan" for her children that required Close to stay out of the home.
 {¶ 30} Connie testified that, as a result of Amy's letter and statements to investigators, a detective and a Children's Services caseworker came to her school to interview her. Connie identified Close as the perpetrator of her sexual abuse in her initial statement to investigators. Deputy Brockmeier testified that, as a result of his interview with Connie, he approached Close and asked Close to come in for questioning. Nina testified that, after Deputy Brockmeier's interview of Close, Close cried and stated that: he didn't know why he did "it;" he made a terrible mistake; and he was going to lose Nina and the girls as a result.
 {¶ 31} In his testimony, Close admitted that he could not explain why the details he gave in a fictional account of events to Deputy Brockmeier might closely match details given by his daughters in separate interviews just hours before. He admitted he did not know the details of his daughter's allegations at the time Deputy Brockmeier interviewed him. He testified that he felt that telling Deputy Brockmeier false stories about inappropriate sexual conduct with his daughters would be "an easy way out" of his extensive work and volunteer obligations.
 {¶ 32} We find that the foregoing constitutes some evidence of the corpus delicti of rape, gross sexual imposition, and sexual imposition. Therefore, the trial court did not commit any error, let alone plain error, in permitting the State to use the confession. Accordingly, we overrule Close's second assignment of error.
 IV {¶ 33} In his third assignment of error, Close asserts that he was denied his right to effective assistance of counsel because his counsel: (1) failed to object to the State's impeachment of Amy and Connie with their prior inconsistent statements; (2) failed to object to Stewart's testimony regarding Connie's prior inconsistent statements; and (3) failed to object to the introduction of Close's confession on the grounds that the State failed to introduce substantive evidence of the corpus delicti of the crimes.
 {¶ 34} Reversal of a conviction based upon ineffective assistance of counsel requires the defendant to show both "(a) deficient performance, `errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment'; and (b) prejudice, `errors * * * so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" State v. Ballew (1996), 76 Ohio St.3d 244, 255, quoting Strickland v. Washington (1984), 466 U.S. 668, 687. As to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland at 689. Furthermore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. Counsel's failure to assert a meritless claim does not constitute ineffective assistance of counsel. State v. Payton, Ross App. No. 01CA2606, 2002-Ohio-508; Thomas v. United States (C.A. 8, 1991),951 F.2d 902, 905.
 {¶ 35} As we determined in our consideration of Close's first assignment of error, many portions of Amy and Connie's prior statements were admissible for their substantive value as non-hearsay. Connie's statement in particular, both as related through her own testimony and through Stewart's testimony regarding her interview with Connie, was admissible pursuant to Evid.R. 801(D)(1)(c). Thus, an objection to the statements would have been fruitless. Additionally, we presume in a trial to the bench that the trial court considered only the reliable, competent and probative evidence before it unless the record affirmatively shows otherwise. Lott at 167. Close does not point to any part of the record that affirmatively demonstrates that the trial court considered the prior statements beyond their permissible use. Thus, any error in failing to object was harmless.
 {¶ 36} Likewise, as we determined in our consideration of Close's second assignment of error, the State presented some evidence of the corpus delicti of his crimes. Therefore, any objection to the introduction of his confession on corpus delicti grounds would have been fruitless, and his trial counsel's performance was not deficient for the failure to so object. Thus, we find that Close's trial counsel's performance was not deficient, and that Close did not suffer prejudice as a result of his counsel's performance. Accordingly, we overrule Close's third assignment of error.
 V {¶ 37} In his fourth assignment of error, Close contends that the admissible evidence presented by the State is not sufficient to sustain a conviction.
 {¶ 38} The Ohio Supreme Court has clearly outlined the role of an appellate court presented with a sufficiency of evidence argument. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. See, also, Jackson v. Virginia
(1979), 443 U.S. 307, 319.
 {¶ 39} This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983),20 Ohio App.3d 172, 175. Rather, this test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. Statev. Thomas (1982), 70 Ohio St.2d 79, 79-80; State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 40} In this case, the record contains overwhelming evidence of Close's guilt. In particular, Close's properly admitted confession details how he sexually abused each of his daughters. Thus, the State presented sufficient evidence to support Close's conviction. Accordingly, we overrule Close's final assignment of error, and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
Abele, J. concurs in judgment and opinion.
Harsha, J., concurs in judgment and opinion as to Assignment of Error III and IV, concurs in judgment only as to Assignment of Error I and II.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J.: Concurs in Judgment and Opinion.
Harsha, J.: Concurs in Judgment and Opinion as to Assignment of Error III IV.
Concurs in Judgment Only as to Assignment of Error I II.