DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant, Danny W. Thompson, appeals from the sentence of the Washington County Common Pleas Court on three counts of unlawful sexual conduct with a minor. Appellant contends there is insufficient evidence to convict him under count one of the indictment and his conviction under that count is against the manifest weight of the evidence. After viewing the evidence in a light most favorable to the state, we find any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt, therefore there is sufficient *Page 2 
evidence to convict him under count one. Similarly, because we are unable to say the jury clearly lost it's way and created a manifest miscarriage of justice, Appellant's conviction under count one was not against the weight of the evidence. Appellant also contends the trial court erred in not excluding a juror, sua sponte, from the jury panel. Because he fails to show the court's decision was plain error, we disagree. Lastly, Appellant contends his trial counsel was ineffective, however, he failed to show his counsel's representation was both deficient and prejudicial. Accordingly, we overrule each of Appellant's assignments of error and affirm the decision of the trial court.
 I. Facts {¶ 2} In November 2004, Appellant and Lee Ann Ward, the victim's mother, began a romantic relationship. The victim, a female minor born in June of 1990, her younger sister, and her mother moved in with Appellant in December of 2004 and stayed until mid-January, 2005. They also lived with Appellant from April, 2005 until mid-June, 2005. In the spring of 2005, while they were living with Appellant, the victim's mother took two-hour, night classes twice a week. While the victim's mother was in class, Appellant stayed at home with the victim and her sister, though the victim's sister would often stay at a friend's house. *Page 3 
During this time alone with the victim, Appellant kissed her. The victim testified there was additional sexual contact during this time, including Appellant touching her between her legs.
 {¶ 3} The relationship between Appellant and the victim's mother ended in mid-June of 2005 when the mother found a note written by Appellant to the victim, wherein he stated that he wanted to be the victim's "first" and that he loved her. After finding the note, the mother and her daughters moved out of Appellant's home. The victim's mother told Appellant not to have any further contact with the victim. However, subsequent to the move, Appellant and the victim remained in contact. The mother learned the victim called Appellant, and she again told him not to have any contact with her daughter. Despite the warning, Appellant and the victim continued to have contact.
 {¶ 4} In September of 2005, Shane Binegar, an acquaintance of Appellant, saw the victim ride a bicycle through his yard, approximately five to ten feet away from him, to a camper owned by Appellant's family. This camper was located near Binegar's home, and could be seen from his back yard. On that occasion, Binegar saw the victim park her bike outside the camper and go inside. Soon thereafter, Appellant arrived in his truck and also entered the camper. Approximately one half hour later, Binegar *Page 4 
observed the victim came out of the camper, straighten her clothes and leave.
 {¶ 5} In subsequent interviews with investigators, the victim admitted that she, on multiple occasions, went to Appellant's camper and called him using a cell phone he left there specifically for that purpose. She testified she met Appellant at the camper three different times and that she had sexual intercourse and oral sex with Appellant in the camper on two of those occasions. She further testified that she willingly engaged in sexual activity with Appellant and that he, at no time, forced her to have sex with him. The victim also testified that they had sex at a motel in Parkersburg, West Virginia.
 {¶ 6} In September of 2005, the victim went to a football game with a friend. Her friend's mother drove them to the game and before halftime, the victim told her friend that she needed to talk to her aunt and walked off toward the parking lot. Her friend did not see the victim again until after the game when she saw the victim with Appellant, in his truck, in the parking lot. Following the football game, the victim's mother became worried when her daughter did not promptly return home. The mother then learned the victim had been seen with Appellant at the game. *Page 5 
As a result, she called the sheriffs department to voice her concerns about the continuing contact between Appellant and her daughter.
 {¶ 7} During the week following the football game, a police detective questioned the victim at school regarding her relationship with Appellant. In this first interview, the victim denied having any sexual relationship with Appellant and told the detective that if medical tests were performed on her, they would show she had not had sex with him. The victim later admitted that she lied to the detective on this occasion.
 {¶ 8} Following that first interview, the detective met with Binegar, who told the detective about seeing the victim and Appellant together at the camper. Armed with this information, the detective met with the victim a second time. During this second interview, the victim changed her story and admitted she had twice had sex with Appellant in the camper. During this second interview, the victim still did not tell the detective she had also had sex with Appellant in a hotel in Parkersburg, West Virginia. She thought West Virginia laws were stricter than those of Ohio and that Appellant might be punished more severely for the incident.
 {¶ 9} On October 17, 2005, detectives interviewed Appellant at his residence. He informed them about his relationship with the victim's mother and told the detectives the age of the victim. When they asked *Page 6 
whether he had had a sexual relationship with the victim, Appellant initially denied it and told the detectives that the victim had pursued him, but he resisted because of her age. However, when the detectives confronted Appellant with the victim's statements, he admitted to having sex with the victim on three occasions: twice in the camper and once in a motel in Parkersburg, West Virginia. Appellant also admitted he and the victim performed oral sex on each other and that he digitally penetrated her on at least three different occasions: (1) in April or May of 2005 when the victim lived at his house; (2) in the camper; and (3) in Parkersburg, West Virginia. In fact, Appellant's interview provided information about additional sexual encounters the victim had not yet admitted to. However, Appellant's admissions corroborated the victim's story about their encounters in the camper. At the end of the October 17, 2005 interview, Appellant agreed to give a tape-recorded confession in which he admitted his sexual contact with the victim. The state introduced this tape recording into evidence during trial.
 {¶ 10} The detective then questioned the victim a third time. During this interview, the victim admitted the full extent of her sexual encounters with Appellant, except she claimed she didn't remember Appellant digitally penetrating her in the spring of 2005. Subsequently, *Page 7 
the victim testified that she intentionally withheld the information about digital penetration from detectives during that third interview, but amended her statement to indicate the incident had, in fact, occurred.
 {¶ 11} At trial, Appellant denied having any sexual contact with the victim. He acknowledged that his voice was on the tape-recorded confession, but testified that he was severely intoxicated when questioned by the detectives and that he did not remember the half-hour to forty five minute interview. Appellant further stated he had no recollection of the detectives talking to him about a sexual relationship with the victim. He testified that he must have confused which female was being discussed, and that he must have actually told detectives about his sexual relationships with the victim's mother and the victim's older step sister. He stated he had had sex with the victim's mother in the camper and in a motel room in Parkersburg. He also testified that he was not at the Parkersburg motel with the victim in September of 2005 and, instead, had visited that motel with someone else. Neither detective present during Appellant's confession detected any indication of Appellant being intoxicated during the interview. *Page 8 
 {¶ 12} The jury convicted Appellant on all three counts of unlawful sexual conduct with a minor and the trial court sentenced him accordingly. Appellant now appeals and asserts three assignments of error.
 II. Assignments of Error {¶ 13} 1. "APPELLANT'S CONVICTIONS [WERE] NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THEREBY VIOLATING APPELLANT'S DUE PROCESS RIGHTS UNDER SECTION 10, ARTICLE 1 OF THE OHIO CONSTITUTION AND THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION.'
 {¶ 14} 2. `[THE] TRIAL COURT COMMITTED PREJUDICIAL ERROR IN NOT EXCLUDING A JUROR FOR CAUSE WHEN THE VICTIM AND HER SISTER WERE GUESTS IN THE HOME OF THE JUROR AND FRIENDS OF HIS DAUGHTER.'
 {¶ 15} 3. `APPELLANT WAS DENIED [EFFECTIVE] ASSISTANCE OF COUNSEL."
 III. First Assignment of Error {¶ 16} In his first assignment of error, Appellant contends there is insufficient evidence to support his conviction on count one of the indictment. Count one of the indictment states "on or about April, 2005, at Newport, Washington County, Ohio, Danny Thompson did, as a person who is eighteen years of age or older, engage in sexual conduct with another, who is not his spouse, to-wit: a fourteen year old female child born 06/14/90, when the offender knows the other person is thirteen years *Page 9 
of age or older but less than sixteen years of age, or the offender is reckless in that regard, and when the offender is ten or more years older than the other person, a felony of the third degree, in violation of the Ohio Revised Code, Title 29, Section 2907.04(A)(B)(3), and against the peace and dignity of the State of Ohio."
 {¶ 17} When determining whether the record contains sufficient evidence to support a criminal conviction, our function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. See, also,Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781,61 L.Ed.2d 560.
 {¶ 18} This test raises a question of law and does not allow us to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175,20 O.B.R. 215, 485 N.E.2d 717. Rather, the test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts *Page 10 
to ultimate facts." Jackson, 443 U.S. at 319. We reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 79-80,24 O.O.3d 150, 434 N.E.2d 1356; State v. DeHass (1967), 10 Ohio St.2d 230,39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 19} R.C. 2907.04(A) provides "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." R.C. 2907.04(B)(3) provides that where "the offender is ten or more years older than the other person, unlawful sexual conduct with a minor is a felony of the third degree."
 {¶ 20} Appellant maintains there is insufficient evidence to show he digitally penetrated the victim in the spring of 2005. He asserts the state's only evidence of this event is his tape-recorded confession, and the detective's testimony concerning that confession, to show he digitally penetrated the victim in April 2005. Appellant claims the state must provide evidence of the crime independent of the confession.
 {¶ 21} The rule cited by Appellant concerns corpus delicti, which means "the body or substance of the crime included in which are usually *Page 11 
two elements: 1. The act. 2. The criminal agency of the act." State v.Maranda (1916), 94 Ohio St. 364, 114 NE. 1038; see, also, State v.Close, 4th Dist. No. 03CA30, 2004-Ohio-1764. The general rule, long established in Ohio, provides "[t]he state must produce independent evidence of the corpus delicti of a crime before the court may admit an extrajudicial confession." Close at ¶ 26, citing Maranda at syllabus. "The quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make a prima facie case. It is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged." Maranda at syllabus; see, also, Close at ¶ 27.
 {¶ 22} We rejected a similar argument before this court in State v.Strickland, 4th Dist. No. 02CA70, 2003-Ohio-4442, at ¶ 20, wherein the defendant appealed his conviction for unlawful sexual conduct with a minor, arguing that "his taped confession should be excluded when considering whether sufficient evidence exists to support his conviction* * *." The defendant in Strickland argued that "there [was] no evidence apart from his extrajudicial confession tending to establish the corpus delicti of the offense" and "that in the absence of independent evidence to establish the corpus delicti of the offense, his confession [was] inadmissible." Id. *Page 12 
However, along with the defendant's confession, the victim testified that she engaged in sexual intercourse with the defendant. Id. at ¶ 22. Because the victim's testimony corroborated the defendant's confession, we found the trial court properly admitted the confession and, thus, sufficient evidence supported the conviction.
 {¶ 23} Here, aside from Appellant's tape-recorded confession that
he digitally penetrated the victim in April 2005 and the testimony of the detective regarding the confession, the state also introduced the testimony of the victim. At trial, the victim testified on direct examination that:
 Q. When you were living with Mr. Thompson at his house, spring of last year [2005], did he ever touch your private areas?
 A. Yes.
 Q. Which areas?
 A. Between my legs.
 Q. And what did he use to touch you there with?
 A. His fingers.
 THE COURT: His hand?
 THE WITNESS: Yes.
 {¶ 24} Further, on cross-examination, the victim testified:
 Q. She [the detective] asked you about being digitally penetrated also, is that right? *Page 13 
 A. Yes.
 Q. And she explained that term to you, did she not?
 A. Yes.
 Q. What's a digit? Do you know? Besides just a number. Do you know we're talking about fingers? If I say — if I say I'm talking about fingers?
 A. Yes
 Q. Okay. Now, you understood that question, at that time, right?
 A. Yeah.
 Q. And on that third occasion, you told her [the detective] about all kinds of things that you and Danny had done, right? Much more than on the second occasion?
 A. Yes.
 Q. And that time, isn't it true that you told the deputy, you do not recall him ever digitally penetrating her while she lived with him at his house?
 A. Yes.
 Q. Right? Was that a true thing that you said to the deputy? In other words, do you believe you were telling the truth to the detective when you said that at that time?
 A. No. No, I don't.
 Q. You thought you were withholding that piece of information?
 A. Yes. *Page 14 
 {¶ 25} Thus, the record contains evidence outside of Appellant's interview admission and subsequent tape-recorded confession of the corpus delicti of the crime. As such, the trial court did not err when it allowed the Appellant's confession and the detective's testimony concerning the admission. Consequently, after viewing all of the evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements of unlawful sexual conduct with a minor as alleged in count one of the indictment proven beyond a reasonable doubt. Accordingly, we overrule Appellant's first assignment of error as it relates to insufficiency of the evidence.
 {¶ 26} In his first assignment of error, Appellant also contends his conviction on count one of the indictment is against the manifest weight of the evidence. The test under the manifest weight of the evidence standard is much broader than for sufficiency of the evidence. State v.Banks (1992), 78 Ohio App.3d 206, 214, 604 N.E.2d 219; State v.Martin (1983), 20 Ohio App.3d 172, 175, 20 O.B.R. 215, 485 N.E.2d 717.
 {¶ 27} "In reviewing a claim that a verdict is against the manifest weight of the evidence, a reviewing court's duty is to weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether the trier of fact clearly lost his or her way and created *Page 15 
such a manifest miscarriage of justice that the conviction must be reversed." State v. Garrow (1995), 103 Ohio App.3d 368, 370-371,659 N.E.2d 814. "However, this review is tempered by the principle that questions of weight and credibility are primarily for the trier of fact." Id. at 371. Further, the trier of fact may believe or disbelieve a witness's testimony in whole or in part. State v. Wagner (Feb. 29, 2000), Pickaway App. No. 99CCA23, citing Swanson v. Swanson (1976), 48 Ohio App.2d 85, 97, 355 N.E.2d 894, 2 O.O.3d 65.
 {¶ 28} Appellant contends "[t]here was absolutely no proof that Danny Thompson penetrated the vaginal cavity of the alleged victim as set forth in count one of the indictment." Further, he claims the victim failed to identify the time count one took place. Both of these assertions are contradicted by the record.
 {¶ 29} In his tape-recorded confession, Appellant admitted the following:
 Q. We also asked you if there was any type of digital penetration on your part to her, and what did you tell us?
 A. Yes.
 Q. How many times did you say that happened.
 A. Once or twice. *Page 16 
 Q. O.K. and again, you had told us previously, which you figured it happened twice here at the house in April?
 A. Yeah.
 {¶ 30} Thus, Appellant both acknowledges the fact that he digitally penetrated the victim and confirms the time the act took place. The detective who interviewed Appellant testified that the information regarding the digital penetration originated with Appellant; in discussing his sexual involvement with the victim, he volunteered the information. The victim also testified that when she originally stated Appellant did not digitally penetrate her, she was consciously holding back information. During trial she testified that Appellant touched her between the legs with his fingers in the Spring of 2005.
 {¶ 31} After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we cannot say the jury clearly lost its way and created a manifest miscarriage of justice. The state introduced substantial evidence, both from Appellant and the victim, that he digitally penetrated her in April of 2005. As such, Appellant's conviction under count one of the indictment was not against the manifest weight of the evidence. *Page 17 
 IV. Second Assignment of Error {¶ 32} As his second assignment of error, Appellant claims the trial court should have removed a juror sua sponte. During trial, after the victim's mother testified, a member of the jury panel, Juror McAtee, advised the court that he had recognized her. In chambers, McAtee informed the court that the victim and her sister had visited his daughters at his house. He also stated the victim had once stayed overnight at his home. After being advised of these facts, the trial court asked the juror whether his familiarity with the victim and her mother would affect his judgment. McAtee replied: "Not to my knowledge, no. I shouldn't have no problems with that." The court then asked if either counsel had questions for the him; Appellant's counsel replied that he was satisfied.
 {¶ 33} We first note that Appellant's counsel failed to object to the trial court's decision not to exclude the juror. As such, on this issue, Appellant has waived all but plain error. Plain error exists only when it is clear the verdict would have been otherwise but for the error.State v. Sanders, 92 Ohio St.3d 245, 263, 2001-Ohio-0189, 750 N.E.2d 90. Plain error has three requirements. First, there must be legal error. Second, the error must be "plain." Within the meaning of Crim.R. 52(B), an error is "plain" if there is an "obvious" defect in the trial proceedings. Third, the *Page 18 
error has to affect "substantial rights." State v. Barnes,94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. "We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." Id. In Barnes, the Ohio Supreme Court also stated "[w]e have acknowledged the discretionary aspect of CrimR. 52(B) by admonishing courts to notice plain error `with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Id., quoting State v. Long (1978), 53 Ohio St.2d 91,7 O.O.3d 178, 372 N.E.2d 804.
 {¶ 34} We addressed the issue of whether error results when a trial court refuses to remove a juror for cause in State v. Wright, 4th Dist. No. 00CA39, 2001-Ohio-2473. Trial courts have discretion to determine whether a juror can be impartial. Id. at *20. The trial court's decision, in this regard, should not be disturbed unless it is manifestly arbitrary. Id. "While fairness requires that jurors be impartial, jurors need not be totally ignorant of the facts and issues involved." Id. at *21, quoting State v. Jones (2001), 91 Ohio St.3d 335,744 N.E.2d 1163, 1172.
 {¶ 35} Appellant maintains the trial court should have, sua sponte, removed McAtee and replaced him solely because his daughters knew the victim and her sister, and the victim had been to his house. However, *Page 19 
when asked if this familiarity would affect his judgment, he unequivocally stated it would not. In light of this, the trial court had no basis to remove him from the panel. Reviewing courts should only notice plain error to prevent a manifest miscarriage of justice. Nothing in the record below warrants such action and Appellant has failed to show the verdict would have been otherwise but for the alleged error. As such, Appellant's second assignment of error is overruled.
 V. Third Assignment of Error {¶ 36} We now address the third assignment of error, ineffective assistance of counsel. Appellant claims his trial counsel was ineffective for a number of omissions and mistakes, including: 1) failing to request that Juror McAtee be removed for cause; 2) failing to use a peremptory challenge to remove another prospective juror; 3) failing to object to hearsay testimony during the testimony of the victim's mother; 4) eliciting harmful testimony from the victim's mother regarding a medical examination of her daughter; and, finally, 5) failing to object to a question regarding the victim's truthfulness.
 {¶ 37} The United States Supreme Court has held "the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." Strickland v. Washington (1984), *Page 20 466 U.S. 668, 684. "[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." Id. at 685.
 {¶ 38} We have stated that in order to establish ineffective assistance of counsel, an appellant must show his counsel's representation was deficient as well as prejudicial. In re Sturm, 4th Dist. No. 05CA35, 2006-Ohio-7101, at ¶ 77. Deficient representation means counsel's performance "fell below an objective standard of reasonableness." Id., quoting Strickland at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment."Strickland at 687. Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." To show prejudice, an appellant must show it is reasonably probable that, except for the errors of his counsel, the proceeding's outcome would have been different. Sturm at ¶ 77.
 {¶ 39} We have also stated "[a] reviewing court when addressing an ineffective assistance of counsel claim, should not consider what, in hindsight, may have been a more appropriate course of action."Wright, 2001-Ohio-2473, at *22. Instead, this court "must be highly deferential." *Page 21 
Id., citing Strickland at 689. Further, "a reviewing court: `must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id., citing Strickland at 689.
 {¶ 40} For the reasons discussed in Appellant's second assignment of error, we find his argument that counsel should have objected to Juror McAtee's presence on the jury does not rise to the level of ineffective assistance. McAtee assured the court he could be impartial despite his familiarity with the victim and the court was satisfied with this assurance. Even had Appellant's counsel objected to McAtee, the trial court was obviously satisfied with McAtee's assertion that his judgment would be unaffected. Trial courts have discretion to determine whether a juror can be impartial and a decision, in this regard, should not be disturbed unless it is manifestly arbitrary. Wright, 2001-Ohio-2473, at *20.
 {¶ 41} Appellant next claims his counsel was ineffective in that, during voir dire, he did not use a peremptory challenge to exclude Juror Mulligan from the panel. Mulligan had been a victim in a case in which the prosecutor in the case sub judice also prosecuted. Appellant's counsel asked the court to remove Mulligan for cause, but the trial court denied his *Page 22 
request. Appellant claims his counsel erred in not then using one of his peremptory challenges to exclude Mulligan.
 {¶ 42} As we already stated, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Appellant must overcome the presumption that his counsel's decision to use his four peremptory challenges on potential jurors other than Mulligan might be considered sound trial strategy. Conducting voir dire is a matter of strategy and tactics and exercising peremptory challenges are part of that strategy. State v. Johnson, 5th Dist. No. No. 2006-CA-04, 2007-Ohio-1685, at ¶ 53. Further, trial counsel is in a much better position to determine which prospective jurors are most qualified to sit on the jury. Id. Appellant has failed to rebut the presumption that his counsel's use of his peremptory challenges were other than sound trial strategy.
 {¶ 43} Appellant also contends his counsel was ineffective in failing to object to hearsay testimony from the victim's mother. She testified that she spoke to a friend of the victim concerning her effort to locate her daughter the night of the football game. The victim's mother testified as to what the friend told her regarding Appellant and the victim meeting the night of the game. Specifically, she stated "one of [the victim's] best *Page 23 
friends at the time called and said that [the victim and Appellant] were seen together in his truck." However, this information, that Appellant and the victim were seen together in Appellant's truck on the night of the game, was also provided by the direct testimony of another witness. As such, any error resulting from Appellant's counsel's failure to object was harmless and not prejudicial to Appellant.
 {¶ 44} Next, Appellant argues trial counsel was ineffective in eliciting the following information from the victim's mother:
 Q. Did any doctor ever tell you, "yes, [the victim]'s had sex, and we can tell it?"
 A. Yes.
 Q. Do you have any records to prove that?
 A. They — they did all the documents and I signed the papers over for the detectives to pick them up.
 Q. So the state would have those, right?
 A. Yes.
 Q. So you are saying there are some medical records that exist that prove she had sex?
 A. Yeah.
 {¶ 45} In its case-in-chief, the state did not introduce evidence concerning the medical examination of the victim. The state contends not doing so was a tactical decision because it feared it may have allowed Appellant to introduce evidence that the victim was promiscuous. *Page 24 
Apparently, Appellant's counsel believed that, because the state did not introduce evidence of the medical examination, medical evidence of the victim having sex did not exist. In an attempt to indicate to the jury there was no way to be sure the victim had ever even had sex, and believing that no such evidence existed, Appellant's trial counsel asked about the medical records. Appellant contends this testimony, elicited by his counsel, was damaging to his case.
 {¶ 46} Though eliciting this testimony may have been a mistake, it does not rise to the level of ineffective assistance of counsel. When addressing ineffective assistance of counsel, reviewing courts must be highly deferential to trial counsel's decisions and should not, using hindsight, consider what might have been a more prudent course of action. Wright, 2001-Ohio-2473, at *22. Appellant's trial counsel had a basis for eliciting the testimony, namely his belief that, because the state had not introduced the medical testimony, nothing in the medical information would confirm that the victim had ever had sex. This error was not "so serious that counsel was not function as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland,466 U.S. at 687.
 {¶ 47} Even if Appellant's counsel's representation had been deficient in this regard, it was not prejudicial within the meaning of ineffective *Page 25 
assistance of counsel. The mother's testimony that there were medical records which proved the victim had sex only provided evidence that the victim was sexually active, not that she had sex with Appellant. As such, the testimony had limited evidentiary value. Further, the jury was given multiple other sources which provided evidence that the victim had engaged in sex, including the victim's own testimony and Appellant's confession. In light of this, Appellant cannot show it is reasonably probable that, except for his counsel's eliciting the testimony about the medical records, the trial's outcome would have been different.
 {¶ 48} Finally, Appellant contends his counsel's representation was ineffective because he failed to object to testimony from a detective, elicited by the state, regarding the credibility of the victim when she initially denied sexual relations with Appellant. The relevant testimony is as follows:
 Q. At that first interview that you had with her, is it fair to say that Megan denied any sexual contact with Danny Thompson?
 A. Yes.
 Q. Did you believe that she was telling you the truth at that time?
 A. No, I did not.
 Q. Why? *Page 26 
 A. Due to the indicators that I had received from her in speaking with her, I knew that there was more going on than she let on. I've interviewed quite a few children, had a lot of training in interviewing children, and she just was giving indicators that led me to believe she was not being completely honest with me.
 {¶ 49} In certain circumstances, Ohio courts have held that trial counsel's failure to object to testimony regarding a child victim's credibility constitutes ineffective assistance of counsel. "An expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." State v. Boston (1989),46 Ohio St.3d 108, 545 N.E.2d 1220, syllabus (modified on other grounds). "This rule recognizes that the fact-finder is charged with determining the veracity and credibility of witnesses." State v. Kincaid (Oct. 18, 1995), 9th Dist. Nos. 94CA005942 and 92CA005945 at *3. In Boston, the Ohio Supreme Court held that the witness' testimony, regarding the truthfulness of the child victim's statements about sexual abuse, were "not only improper" but "egregious, prejudicial and constitutes reversible error."Boston at 128. However, the facts of the case at hand distinguish it from Boston.
 {¶ 50} "Recent case law states that `Boston does not apply when the child victim actually testifies and is subjected to cross-examination.'"State v. Benjamin, 8th Dist. No. 87364, 2006-Ohio-5330, at ¶ 19, quotingState v. Fuson, (Aug. 11, 1998), 5th Dist. No. 97 CA 000023; see, also, *Page 27 State v. Curren, 5th Dist. No. 04 CA 8, 2005-Ohio-4315, State v.Smith, 12 Dist. No. CA2004-02-039, 2005-Ohio-63, In re W.P., 8th Dist. No. 84114, 2004-Ohio-6627. "We have previously distinguished Boston from cases where the victim does indeed testify." State v. Schoenberger, (Jan. 13, 1998), 5th Dist. No. 89-CA-13, at *1.
 {¶ 51} "Based upon our understanding of Boston and its progeny, we find that [the witness'] testimony concerning the victim's veracity was improper. `However, this [C]ourt has recognized that error in admitting such expert testimony may be harmless beyond a reasonable doubt. This conclusion is warranted if the victim testifies and is subject to cross examination, the state introduces substantial medical evidence of sexual abuse, and the expert's testimony is cumulative to other evidence.'"State v. Morrison, 9th Dist. No. 21687, 2004-Ohio-2669, at ¶ 64, quotingKincaid, supra.
 {¶ 52} In the case at hand, the victim did testify and was subject to cross-examination. The detective's testimony that the victim was not being truthful during her initial interview was supported by substantial additional evidence. In subsequent interviews, the victim admitted the sexual contact did, in fact, take place. Appellant, in his tape-recorded confession, also admitted to the sexual contact. Further, during his *Page 28 
interview with the detectives, Appellant volunteered additional information about the sexual contact which the victim later confirmed.
 {¶ 53} Though the court in Kincaid, in holding the witness' testimony as to truthfulness was harmless, also found there was medical evidence of sexual abuse, such a finding is not necessary. The court inMorrison stated "[t]his case is easily distinguishable from our prior cases. Here, the victims were ages nine and ten when the sexual abuse occurred. In contrast, the victim in Kincaid was six years old and the victims in Palmer were seven and four years old. Because the victims inKincaid and Palmer were far younger than the victims in the present case, "[i]t is understandable that the court required substantial medical evidence of the sexual abuse[.]" Morrison at ¶ 65, quotingState v. Miller (Jan. 26, 2001), 2nd Dist. No. 18102, at *6. In the case at hand, the victim was a teenager when the sexual contact occurred.
 {¶ 54} In Boston, there was no independent method to ascertain reliability besides the expert witness that vouched for the child victim, who was less than three at the time of the incident. In the case at hand, the victim, a teenager, was subject to direct and cross examination and the jury had ample opportunity to assess her credibility. Furthermore, the detective's testimony, regarding the victim's credibility during the initial *Page 29 
interview, was not decisive. There was ample, unrelated testimony, including that of both Appellant and the victim, for the jury to find as it did. We cannot say, but for Appellant's trial counsel's failure to object, the proceeding's outcome would have been different.
 {¶ 55} After reviewing each of Appellant's arguments, none of the claimed deficiencies meet the criteria for ineffective assistance of counsel. In light of the evidence presented at trial, he has failed to show how the effect of any or all of these claimed errors would have altered the outcome of the proceedings. Because Appellant cannot show his trial counsel's representation was both deficient and prejudicial, we overrule his third assignment of error.
 VI. Conclusion {¶ 56} Because any rational trier of fact could have found the essential elements of unlawful sexual conduct with a minor proven beyond a reasonable doubt, Appellant's convictions were supported by sufficient evidence. Similarly, after weighing the evidence, we cannot say the jury clearly lost it's way and created a manifest miscarriage of justice and, thus, Appellant's convictions were not against the manifest weight of the evidence. Further, the trial court's decision to not exclude a juror, who was familiar with the victim, did not constitute plain error. Finally, none *Page 30 
of Appellant's arguments that his trial counsel's representation was ineffective were persuasive. Accordingly, we overrule each of Appellant's assignments of error and affirm the decision of the trial court.
JUDGMENT AFFIRMED.